VIOLA M. FLANNERY, Respondent, *v.* 15 WEST 44TH STREET COMPANY, INC., Appellant, Impleaded with UNDERPINNING AND FOUNDATION COMPANY, Defendant.

First Department, July 2, 1920.

Mortgages — foreclosure — authority of agent to represent mortgagee in making agreement for further loan and to extend time of payment — evidence — extension of time to pay interest or taxes — consideration — estoppel.

In an action to foreclose a mortgage on real property in which the defense interposed was that the plaintiff had agreed through her real estate agent or broker to make an additional loan to the defendant and had agreed to extend the time to pay interest and taxes on the mortgage and that such time had not expired when the foreclosure proceedings were begun, it was proper to exclude from the evidence letters between the defendant and said real estate agent with respect to changing the terms of the building loan agreement entered into between the parties, and concerning application for advances and the submission of amended plans, as they had no material bearing on the issue as to whether the said agent had authority to make a new agreement for the plaintiff for a further loan to the defendant or to make a valid agreement extending the time to pay the interest and taxes.

On all the evidence, *held*, that said real estate agent or broker had no authority to make any agreement in reference to an additional loan or for the extension of the time to pay the interest and taxes on the mortgage.

*Held, further*, that the defendant knew that the said agent did not have authority to agree to a further loan, but that it 'was necessary to procure the approval of the plaintiff.

While it may be inferred from the evidence that a change was made in the plans of the building which was constructed under the building and loan agreement, and that the plaintiff acquiesced therein, that does not establish that the plaintiff agreed to make a further loan or to extend the time of paying the interest or taxes.

The authority of the said real estate agent to act in the matter could not be proved by his own declarations.

The failure of the said agent to deduct, from the final payment to the defendant under the mortgage, the amount of taxes and interest then due is no evidence of his authority to extend the time for the payment of the taxes and interest.

If the said agent assumed to make an agreement for the plaintiff to extend the time for the payment of interest and taxes, it was in no event binding upon the plaintiff, for there was no consideration therefor, and she is not estopped from questioning his authority and the consideration, for the defendant's letters show that any change in the plan of the building was made at the instance and for the full benefit of the defendant.

APPEAL by the defendant, 15 West 44th Street Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 29th day of April, 1915, upon the decision of the court rendered after a trial at the New York Special Term, a verdict having been rendered in favor of the plaintiff on settled issues after a trial at the New York Trial Term decreeing foreclosure of a building loan mortgage, and also from an order, entered in said clerk's office on the same day, denying defendant's motion to set aside the verdict on the settled issues and for a new trial made upon the minutes.

*Samuel Seabury* of counsel [*Alvin C. Cass* with him on the brief], for the appellant.

*H. Snowden Marshall* of counsel [*Benjamin Trapnell* with him on the brief], for the respondent.

LAUGHLIN, J.:

The mortgage was executed on the 12th day of May, 1914, by the defendant, a domestic corporation, to the plaintiff, as

collateral security for its bond to her bearing even date therewith. By the terms of the bond and mortgage the plaintiff was to advance to the defendant the sum of $125,000, pursuant to the terms of a contract of sale and building loan agreement made between the plaintiff and Frank Slater on the 25th of November, 1913 — subsequently assigned to defendant — as modified by an agreement in writing between the plaintiff and the defendant and Slater on the 20th day of April, 1914. The defendant was to pay six per cent interest on the advances on the tenth day of November after the agreement and semi-annually thereafter, and the principal was to become due and payable on the 1st day of March, 1915. It was further provided that at the election of the mortgagee the principal should become due and payable after default by the defendant in the payment of interest thereon or on two prior mortgages on the premises, or in the payment of taxes or assessments. This action was commenced on the 18th day of January, 1915. It is alleged in the amended complaint that the defendant has neglected and refused, after due demand, to pay the interest due on the 10th day of November, 1914, on the moneys advanced, although due demand therefor was made, and that it has neglected and refused to pay the semi-annual interest due on one of the prior mortgages on the 10th day of November, 1914, and has neglected and refused to pay the semi-annual tax on the premises which became due and payable December 1, 1914, and that the period prescribed in the mortgage after which the defaults entitled the plaintiff to elect that the whole amount should become due and payable has expired. The defendant, in its amended answer, among other things, pleaded that for a valuable consideration the plaintiff duly extended the time for payment of interest and taxes and that the time so extended had not expired; that under the contract for the sale to the defendant of the premises and the building loan agreement the plaintiff agreed, on the completion of the building, to take back a second purchase-money mortgage for the amount of the difference between a permanent mortgage to be placed on the property for not less than $285,000 and the sum of $400,000, and that thereafter the plaintiff, for

greater security of her investment, or for some other reason, requested the defendant to change the plans for the building from a loft building into an office building of a far more expensive character; that the original building loan agreement under which the mortgage for $125,000 was given was intended to cover the amount of money required for the erection of the building under the original plans, and that the change in the plans from a loft to an office building involved an additional cost of construction estimated at from $20,000 to $25,000, and that at the special instance and request of the plaintiff the defendant agreed to change the character of the building in the course of construction from a loft building into an office building, and that the plaintiff on or about the 15th day of September, 1915, agreed to loan the defendant an additional $15,000 toward the cost of construction under the terms of the building loan agreement, and that pursuant thereto the defendant caused the plans and specifications to be changed and caused the building to be erected and completed as an office building at an increased cost, and fully performed its agreement; that the plaintiff failed to advance the $15,000 or any part thereof, excepting that she deducted from the purchase price of the property the sum of $2,719.63 which the defendant was obligated to pay under the contract of purchase, by adding said sum to the amount of a purchase-money mortgage of $115,000 executed by the defendant to the plaintiff which is a prior lien to the lien of the mortgage now sought to be foreclosed, and that by reason of the premises the plaintiff has broken the terms of the contract of sale and building loan agreement as amended by the agreement of September 15, 1915, for the advancement of additional moneys. The defendant, as a separate defense, alleged that the plaintiff extended the time of the defendant to pay the interest and taxes and that the time has not expired, and that, therefore, the defendant is not in default; and for a further defense and counterclaim the defendant alleged that one Joseph A. Flannery was the husband and general agent of the plaintiff and represented her in all the matters in question and that one Robert has acted as the agent and on behalf of said Joseph A. Flannery and has conducted all negotiations concerning the same; and that the

amended agreement for the advancement of the $15,000 was negotiated and arranged between the defendant and said Robert with the knowledge, consent and authority of the plaintiff, and that the defendant has demanded that the plaintiff advance such moneys, which demand the plaintiff has refused to comply with, except that the plaintiff has released from the purchase price and the building loan agreement the sum of $2,719.63; and that the defendant has offered to execute a new bond and mortgage for the additional sum to be advanced by the plaintiff and that the plaintiff has refused to accept it, and that by reason of the premises the defendant is entitled to recover the balance so agreed to be advanced, namely, the sum of $12,280.37, and to have the amount thereof added to the bond and mortgage sought to be foreclosed. For another separate defense and counterclaim the defendant alleged that the mortgage is tainted with fraud, in that the plaintiff, instead of improving the property herself, conceived the idea of inducing some builder to take the property and erect a building thereon and thereby avoid obligations to contractors, materialmen and others; that the husband was the plaintiff's agent and acted through Robert, and that pursuant to said scheme the plaintiff induced the making of the contract of sale and building loan agreement and bond and mortgage; that the plaintiff represented and held out said Robert as her agent, and represented him as clothed with full authority to speak and act for her; that the plaintiff knew that Slater was financially irresponsible and that the defendant's only asset was the equity in said premises, and that the contract was assigned by Slater to the defendant and title taken by it with the knowledge and consent of the plaintiff and the erection of the building was proceeded with; that the plaintiff selected the style of the building to be erected, namely, a loft building, similar to that erected at No. 16 West Forty-sixth street, borough of Manhattan, New York; that at the time the contract of sale and building loan agreement was made the plaintiff and Slater computed the cost of the loft building at $125,000; that pursuant to said scheme the plaintiff procured the character of the building to be changed from a loft to an office building at an additional cost and expense to defendant of $25,000, which it was without

means to pay, and thereupon the plaintiff through Flannery and Robert promised and agreed to advance the sum of $15,000 toward the additional cost; that acting in good faith and relying on said promise, the defendant caused the plans to be changed from a loft to an office building and thereby incurred an additional expenditure of $15,000, and that the defendant performed extra work, labor and services, and advanced money and contracted debts not covered by the original agreement, in and about the improvement of the property, solely relying on the promise of the plaintiff with respect to making the additional advance; that the plaintiff never intended to make the advance but intended to defraud the defendant, and that Robert repeatedly promised to procure the additional loan, and that the plaintiff caused Robert to deceive the defendant and to induce it to incur further indebtedness and expense with the intent of injuring and defrauding it, and that the plaintiff refrained from insisting on the payment of the interest and taxes to induce the defendant to complete the building, intending then to call the mortgage and to foreclose it; that at all the times in question it was understood and agreed between the plaintiff and the defendant that the building loan mortgage would be paid out of the permanent loan to be placed on the property which had to be not less than $300,000, and that Robert, who was an experienced real estate operator and broker, represented that he would be able to procure a permanent loan on the property of $285,000 and, at the instance and request of the plaintiff, had the defendant refrain from procuring the loan elsewhere, and that this was done to enable the plaintiff to bid in the property on foreclosure; and that by reason of the premises the defendant has been induced to incur obligations which it is unable to meet and has lost the use of the premises through a receivership and has sustained damages in the sum of $25,000. The judgment demanded by the defendant was that the *lis pendens* and bond and mortgage be canceled and that the plaintiff be required to advance the balance of the $15,000 so agreed to be advanced and that the defendant have judgment for the sum of $25,000.

It is difficult to understand how the pleader attempted to establish a connection between the purchase-money mort-

gage which was executed and delivered on December 8, 1913, and the alleged agreement for a further building loan which was not claimed to have been made until September 15, 1914; but since no point is made with respect thereto, with these observations we dismiss it.

On the defendant's motion three issues were framed for trial by jury, namely:

" 1. Did the plaintiff make the contract set forth in the first counterclaim in the answer herein, and if so, how much is due to the defendant, 15 West 44th Street Company herein?

" 2. Has the plaintiff defrauded the defendant as set forth in the second counterclaim, and if so, what is the amount of damages the defendant suffered therefrom?

" 3. Did the plaintiff extend the time of the 15 West 44th Street Company to pay the interest and taxes referred to in the complaint, and if so, to what time? "

Those special issues were brought to trial before Mr. Justice GREENBAUM and a jury, and at the close of the evidence the jury were directed by the court to answer each of the questions in the negative. The cause was then brought on for trial at Special Term and, by consent, a motion for a new trial of the issues tried before the jury was there made and some further evidence was taken thereon and the amount due was computed. The court thereafter made a decision denying the motion and decreeing the foreclosure of the building loan mortgage.

It was conceded on the trial that the husband of the plaintiff was her general agent authorized by her to make any agreement in the premises. There is no evidence, and it is not claimed, that either the plaintiff or her husband personally or by letter made any agreement with the defendant for advancing more money. The only transactions claimed by the defendant with respect thereto consist of correspondence and interviews with Robert.

Robert was a real estate agent having offices at No. 150 Broadway. The plaintiff employed him as a broker to sell the premises and he placed his sign thereon. He negotiated the sale to Slater and was paid the regular brokerage commission therefor by the plaintiff. As an inducement to Slater to purchase he undertook to procure a building loan agree-

First Department, July, 1920.                    [Vol. 193.

ment from the plaintiff, and for procuring that he was paid a commission of $1,250 by the defendant. The payments were made in installments from moneys received by the defendant under the building loan mortgage. The original contract and building loan agreement was signed by the plaintiff personally. The deed was delivered to the defendant, through Robert, on the 8th day of December, 1913, and it then executed and delivered to him, for the plaintiff, a purchase-money mortgage on the premises which he sent to her. At that time an agreement in writing was made in duplicate, and one was signed by the defendant and delivered to Robert and the other was signed by him as her attorney in fact and delivered to the defendant. It provided that the delivery of the deed was not to be deemed to merge the building loan agreement. It was not shown that either the plaintiff or her husband was aware that Robert so assumed to execute that agreement which was evidently prepared by the title company which had charge for plaintiff of closing the title; and it was conceded that the title company acted for the plaintiff with respect to the payments made under the building loan mortgage, and that the final payment thereunder was made by it December 1, 1914. The title company dealt with Robert as representing the plaintiff and by his direction made one payment without requiring the defendant to pay a lien still shown unpaid on the search. It does not appear definitely when the erection of the building was commenced. The plans and specifications, which were to be to the satisfaction of the plaintiff, were submitted to and left with Robert a few days. The court excluded proof that he verbally approved them. The first request for payment under the building loan agreement was made April 8, 1914, by a letter addressed to Robert. The evidence shows that the defendant never met the plaintiff or her husband in the transactions and that all of the negotiations were with Robert. It is quite plain from the correspondence that he assumed to have general authority from the plaintiff with respect to making the advances under the building loan agreement and mortgage. The defendant applied to him for a modification of the terms of payment under the building loan agreement before the execution of the building loan mortgage, and he wrote the defendant on

April 15, 1914, assuming to agree to make, on certain conditions, the modifications requested; but the formal agreement of modification was signed and executed by the plaintiff and Slater and the defendant on the 20th day of April, 1914. That, instead of tending to show that Robert had authority to change the agreement, plainly indicated the contrary. At most it shows that he sustained some relation to the plaintiff with reference to the performance of the building loan agreement and mortgage and communicated the defendant's request to her and that she acted thereon. Robert was on terms of social friendship with the plaintiff and her husband, and it is to be inferred from the evidence that when they had occasion to employ a broker or agent to look after their real estate they employed him. To the defendant he assumed to represent the plaintiff with respect to the advances to be made under the building loan agreement and the collection of interest on the purchase-money mortgage, and apparently the plaintiff and her husband acquiesced therein. In several other transactions, in which he represented the plaintiff or her husband which resulted in obligations running to her, he had also assumed to represent her in demanding and receiving payments due to her, and during the transactions here in question he had occasion to see plaintiff's husband concerning other pending or contemplated business in which he acted or expected to act as a broker. He, however, did not personally pass upon whether the different stages of the erection of the building entitled the defendant to advances, but hired an inspector or architect for that purpose who was paid by the plaintiff's husband; and although he took part in the necessary inspections the reasonable inference from the evidence is that the advances were made on the report of such inspector or architect or only after such report and at the office of the title company, where checks of the plaintiff or her husband for deposit with the title company were sent or were delivered by Robert to it. The court excluded the letter from the defendant to Robert, and Robert's letter in reply, to which reference has been made, with respect to changing the terms of the building loan agreement and all of the correspondence with Robert concerning applications for advances made under the building loan mortgage and the

submission of amended plans to him and his action thereon, and with respect to a request from him to the defendant to obtain insurance on the building and its action thereon. The documentary evidence so excluded was marked for identification and is in the record. Evidence that the insurance was procured at Robert's request was subsequently received. I am of the opinion that the evidence so offered was properly excluded and that if it had been received it would have had no material bearing on the issue as to whether Robert had authority to make *a new agreement for the plaintiff for a further* loan to the defendant or to make a valid agreement extending the time to pay the interest and taxes. All that Robert assumed to do or did, so far as plaintiff or her husband had notice or knowledge, was, either as a volunteer or under implied authority, in looking after her interest under the building loan agreement as made and as modified by herself. Authority to supervise the performance of a contract is one thing, and authority to make an entirely new agreement with respect thereto is quite another. No express authority on the part of Robert was shown. Further evidence was offered by defendant which it claims would have tended to show full authority in Robert and was excluded on plaintiff's objections. It consists in part of a letter from the defendant to Robert under date of September 25, 1914, which is ten days after the date of the making of the agreement for the additional loan as alleged in the answer. The letter draws attention to the fact that under the original agreement the defendant was to erect a building similar to a building on West Forty-sixth street, and it is stated therein that after filing the plans and obtaining the approval of the building department the defendant found that a new commission known as the labor bureau had been created to supervise buildings that were to be used for the purpose of manufacturing, and that compliance with the rulings of that bureau would have involved an additional expenditure of about $15,000 but would have enabled defendant to take manufacturing tenants; and that it decided not to do that and to complete the building as originally intended, but that it found that inquiries from tenants for space in the building " will require that we turn it into a strictly office building " which would cost from

$20,000 to $25,000 more than was originally figured on, and, therefore, the defendant requested an additional loan in the sum of $15,000.    It will be observed that the letter, which was excluded by the court, instead of supporting the allegations contained in the amended answer, shows that the contemplated change in the plans of the building was .not for the benefit of the plaintiff or at her request, but solely for the benefit of the defendant and on its own motion and that the additional loan was not solicited as a matter of right but as a favor. That Robert did not assume to make an agreement with the defendant for the plaintiff concerning an additional loan on or about September 15, 1914, as alleged in the answer, is plainly shown by another letter dated November 10, 1914, offered by the defendant and excluded by the court, in which the defendant refers to additional expenses incurred by it in fitting the building for offices and stated that it had brought the matter to his attention several times and had made many improvements relying on his statement that he would procure an additional loan of $10,000, and that it then wrote a letter at his request explaining what it purposed doing but that it had heard nothing from him.    That did not even indicate that Robert had promised to procure the additional loan there stated to be $10,000 from the plaintiff; and at most it merely indicates that negotiations on the subject of procuring a further loan had been opened with Robert and that he promised to procure for the defendant from some source an additional loan of $10,000.    In another letter written by the defendant to Robert on the 9th of October, 1914, which was offered by the defendant and excluded, it referred to a con-versation with him by telephone regarding an additional loan and stated that it was perfectly willing to leave it to Mr. Flannery " and do just as he wishes us to do," but that if Mr. Flannery did not think it best to make the changes it was willing to abide by his judgment, and stated that there was an increasing demand for offices and that the building could be changed into an office building during construction at much less expense than after its completion.    That letter plainly shows that the defendant knew that Robert did not have authority to agree to a further loan and that it was necessary to procure the approval of the plaintiff's husband,

and of such approval there is no evidence. On the further proceedings at Special Term after the verdict the plaintiff's husband testified that Robert informed him that the defendant desired an additional loan and that he turned the application down. In a prior letter dated September 14, 1914, the defendant informed Robert that it believed that it would be best to change the character of the building from a loft to an office building, and that in order so to do it had *already* changed the character of construction and was obliged to make additional improvements to cover the situation, and stated that it believed it to be to " our mutual interest " that the building be constructed to meet the demands of the neighborhood, and in order to make these changes it requested him to procure an additional loan of $15,000, and closed by stating " as we must make our changes now to save a large increase of realtering, we would ask that you give this your immediate attention." Other correspondence excluded is of similar import, but none of it even tends to show that Robert had assumed to make such an agreement in behalf of the plaintiff. It does not otherwise appear when the defendant amended the plans changing the building into an office building; but the fair inference is that such change was made before November 4, 1914, and before December 15, 1914, which latter date was after all advances had been made under the building loan mortgage. The defendant offered to show a conversation with Robert on said November fourth concerning the interest due on the building loan mortgage, payment of which Robert had demanded by letter of that date, and a conversation with him on said December fifteenth with reference to the additional loan of $15,000, and both conversations were excluded on the plaintiff's objection that it had not been shown that Robert was authorized to bind her by any new agreement. In no view of the evidence, had it been received, could it be held that it would have shown authority in Robert to bind the plaintiff to make a further loan to the defendant or to extend the time of payment of interest and taxes due. The defendant failed to prove either the original or the amended plans. It may be inferred that a change was made in the plans and that the plaintiff acquiesced therein, but that falls far short of proving that

she agreed to make a further loan or to extend the time of paying the interest or taxes. The interest and taxes, for the failure to pay which the plaintiff elected to declare the principal to be due and payable, were due and payable before the final payment was made by the plaintiff under the building loan mortgage, and she was at liberty to deduct them from such payment. It is claimed that the failure of the title company, which concededly represented her, and of Robert to deduct them from such final payment is evidence of an agreement by her to extend the time of payment thereof or of Robert's authority so to do and that, therefore, it was error to exclude evidence, not as to the authority that she conferred upon them or either of them in the premises, but as to what Robert then said on the subject. His authority could not be proved by his own declarations, and it is manifest that the failure of the plaintiff's agents to perform their duty to her by exacting such deductions is no evidence of their authority to extend the time for the payment of the taxes and the interest, even if they assumed so to do. If Robert assumed to make such an agreement for the plaintiff, it was in no event binding upon her for there was no consideration therefor, and she is not estopped from questioning his authority and the consideration, for the defendant's letters, which could not be overcome by any testimony which was excluded, plainly show that any change in the plan of the building was made at the instance and for the sole benefit of the defendant. I do not deem it necessary to consider whether the judgment could be sustained on the ground that the whole amount of the mortgage was due before the issues were tried, but that fact tends to show that no injustice will be done in affirming the judgment which was rendered so long ago.

I am of the opinion, therefore, that no prejudicial error was committed in excluding the evidence offered or in directing a verdict on the special issues.

It follows that the judgment and order should be affirmed, with costs.

CLARKE, P. J., DOWLING and SMITH, JJ., concur.

Judgment and order affirmed, with costs.