# NORTHWESTERN ELECTRIC EQUIPMENT CO., APPELLANT, *v.* LEIGHTON ET AL., RESPONDENTS.

(No. 5,058.)

(Submitted March 5, 1923. Decided March 22, 1923.)

[213 Pac. 1094.]

*Contracts of Sale—Evidence—Letters—Admissibility—Declarations Against Interest—Special Agents—Authority—New Trial.*

New Trial—Order Granting, in General Terms—Appeal.
   1.   An order granting a new trial, general in terms, will be sustained on appeal if it can be upon any ground stated in the motion.
Same—Insufficiency of Evidence—Discretion.
   2.   A motion for new trial based upon the insufficiency of the evidence to sustain the verdict is addressed to the sound legal discretion of the trial court.
Same—Conflict in Evidence—Affirmance of Order.
   3.   Where there is a substantial conflict in the evidence the order granting or refusing a new trial will not be disturbed unless the court's discretion has been abused.
Same—Order Granting—How Viewed on Appeal.
   4.   An order granting a new trial will not be set aside as readily as an order denying one, since the latter ends the case, whereas the former merely restores the parties to the same condition in which they were before trial.
Same—Insufficiency of Evidence—Duty of Court.
   5.   Where the trial judge upon a review of the evidence on motion for new trial is satisfied that the preponderance of it was not with the successful party, it is its duty to set the verdict aside, and its order made under such circumstances will not be set aside on appeal.
Trial—Evidence—Portion of Series of Letters Proved, All Admissible.
   6.   Under section 10515, Revised Codes of 1921, where one party introduces a part of a series of letters touching the transaction in controversy, the other party is entitled to introduce the remaining portion if material to a complete understanding of the entire transaction.
Same—Corporations—Letter Written by Officer Admissible.
   7.   Since a corporation can only speak through its duly authorized officer or agent, where a letter written by such an officer, properly identified, was introduced in evidence, it was the corporation which spoke through it and it was therefore admissible in evidence, and the objection that it was inadmissible because the officer signing it was not a witness was improperly sustained.
Special Agents—Authority—Party Bound to Ascertain.
   8.   One who deals with a special agent is bound at his peril to know for whom the latter is acting as well as the character and extent of his authority.

Evidence—Corporations—Letters—Declarations Against Interest—Admissibility.
9.   In an action by an electric supply company against a citizens' committee to recover for street lighting fixtures in which the defense was that the equipment had been furnished direct to each property owner and not to the committee, letters written by an officer of the company containing declarations against its interest and the minutes of the city council under which it agreed to furnish the light if the property owners would install the lighting fixtures, were admissible in proof of the theory of defendants' case.

*Appeal from District Court, Custer County; Frank P. Leiper, Judge.*

ACTION by the Northwestern Electric Equipment Company against A. C. Leighton and others. Verdict for plaintiff and, from an order granting new trial, it appeals. Affirmed.

*Mr. W. C. Parker,* for Appellant, submitted a brief and one in reply to that of Respondents; *Mr. Rudolph Nelstead,* of Counsel.

Persons or committees contracting in the name of an association which is unincorporated, are personally liable. (*Nolan* v. *McNamee,* 82 Wash. 585, 144 Pac. 904; *Lewis* v. *Tilton,* 64 Iowa, 220, 19 N. W. 911; *Sheehy* v. *Blake,* 77 Wis. 394, 9 L. R. A. (n. s.) 564, 46 N. W. 537; *Inglis* v. *Millersburg Driv. Assn.,* 169 Mich. 311, Ann. Cas. 1913D, 1174, 136 N. W. 443; *Davison* v. *Holden,* 55 Conn. 103, 3 Am. St. Rep. 40, 10 Atl. 515; *Osborne* v. *Dickey,* 9 Ga. App. 500, 71 S. E. 763.)

It is appellant's contention that there was no duty on the part of plaintiff to inquire of the citizens' committee whether or not it was acting in a representative capacity and who its principals were. Under the law plaintiffs had a right to deal with the citizens' committee as principal; and, unless the latter disclosed, at or prior to the time the goods were purchased, that it acted in a representative capacity, and that the property holders mentioned were the persons liable for the payment of the indebtedness, then the defendants could not claim at the time of the trial, nor would any evidence be competent and admissible to prove that they were merely

agents, and that the property holders constituted their prin-
cipals who were primarily liable for the payment of the
indebtedness. (*Garcia & Maggini Co.* v. *Colvin,* 53 Cal. App.
79, 199 Pac. 1113; *Letcher* v. *Maloney* (Okl.), 172 Pac. 972;
*Frank* v. *Woodcock,* 72 Or. 446, 143 Pac. 1105; *Cooley* v.
*Ksir,* 105 Ark. 307, 43 L. R. A. (n. s.) 527, 151 S. W. 254;
*Harmon* v. *Parker,* 193 Mich. 542, 160 N. W. 380; *Gay* v.
*Uren,* 109 Minn. 101, 26 L. R. A. (n. s) 742, 123 N. W. 295;
*Curtis* v. *Miller,* 73 W. Va. 481, 50 L. R. A. (n. s.) 601,
80 S. E. 774.)

*Messrs. Loud & Leavitt* and *Mr. George W. Farr,* for Re-
spondents, submitted a brief; *Mr. Charles H. Loud* argued
the cause orally.

We submit that it was incumbent upon the plaintiff to
prove that defendants actually agreed among themselves to
form, and act as, a committee before they can be held liable
as members of any committee. (*McCabe* v. *Goodfellow,* 133
N. Y. 89, 17 L. R. A. 204, 30 N. E. 728; *Child* v. *Christian
Society,* 144 Mass. 473, 11 N. E. 664; *Volger* v. *Ray,* 131
Mass. 439.)

The plaintiff in dealing with McGill, the agent, did so at
its peril. It was bound to ascertain both his authority and
its extent. The mere fact that it shipped the goods, billing
them to the citizens' committee, and that McGill received
these goods proved nothing. (*Moore* v. *Skyles,* 33 Mont. 135,
3 L. R. A. (n. s.) 136, 82 Pac. 799; *Schaffer* v. *Mutual Bene-
fit Life Ins. Co.,* 38 Mont. 459, 100 Pac. 225.) The plaintiff
claims that the acts of McGill, even though unauthorized in
the first instance, were ratified by the defendants and at-
tempts to show the ratification by the fact that Mr. Butler
forwarded to the plaintiff certain sums which had been col-
lected from time to time. This would not be sufficient proof
of ratification. (*Spelman* v. *Gold Coin Mining & Milling Co.,*
26 Mont. 76, 91 Am. St. Rep. 402, 55 L. R. A. 640, 66 Pac.
597.) There was not any proof, however, that the defendants

ever knew anything about the receipt of the goods, or had any knowledge thereof other than as individual owners, and there can be no ratification of an agent's unauthorized act where it appears that the principal was not aware of it. (*Weidenaar* v. *New York Life Ins. Co.,* 36 Mont. 592, 94 Pac. 1.)

. MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was instituted by the Northwestern Electric Equipment Company against A. C. Leighton, C. B. Towers, C. W. Butler, Charles E. Coggshall, Kenneth McLean and J. J. McGill. In the complaint it is charged that these defendants, with one Fred Schmalsle, associated themselves as an unincorporated society or committee for the purpose of installing ornamental lights upon certain streets in Miles City; that the association assumed the business name "Citizens' Committee" or "Citizens' Street Lighting Committee," and as such duly appointed McGill agent to purchase the necessary merchandise; that through McGill the order for the materials was transmitted to plaintiff, the order accepted, and the materials furnished. The other allegations are not material here. Apparently the defendant Coggshall was not served with process and he did not appear. McGill filed a separate answer, and the defendants Leighton, Towers, Butler and McLean a joint answer, which put in issue all the material allegations of the complaint. At the opening of the trial the cause was dismissed as against McGill and he became the chief witness for the plaintiff. A motion for a nonsuit was sustained as to defendant Towers, and he was dismissed from the action. A verdict was returned in favor of the plaintiff for the amount claimed against the defendants Leighton, Butler and McLean, but upon their motion a new trial was granted, and plaintiff appealed from the order.

The order is general in terms, and will be sustained if it [1] can be upon any ground mentioned in the motion for new trial. (*McVey* v. *Jemison,* 63 Mont. 435, 207 Pac. 633.)

The grounds relied upon were insufficiency of the evidence to justify the verdict, and errors in law occurring at the trial.

So far as it was based upon the first ground, the motion [2–4] was addressed to the sound legal discretion of the trial court. If errors in law were committed by the court, which prejudiced the substantial rights of the defendants, they were entitled to a new trial as a matter of right. There is not involved any question of ostensible agency or ratification of an unauthorized act of an agent. Plaintiff must stand or fall by its allegations that the "committee" mentioned actually existed; that defendants were members thereof; that McGill was duly authorized to act for it and that credit was extended to it. These were the four primary questions before the lower court, and from the record as it reflects upon them, the propriety of the order granting a new trial is to be determined. The same judge who presided at the trial of the cause presided in court when the motion for a new trial was granted. He occupied a peculiarly advantageous position, in that he heard the witnesses testify, observed their demeanor in court, and was better able to estimate their credibility and the weight to be given to their testimony than are the members of this court, and, since the personal presence and deportment of a witness are often prime factors in the determination of the credit to be given to his testimony, this court and other courts of last resort generally recognize and enforce the rule that where there is a substantial conflict in the evidence the order granting or refusing a new trial will not be disturbed, unless it appears that the discretion of the court has been abused. (*Slater* v. *Bright Hotel Co.*, 59 Mont. 230, 196 Pac. 152.)

It is a corollary to the foregoing rule—"That an order granting a new trial will not be set aside so readily as an order denying one; the reason being that the latter ends the case, so far as the trial court is concerned, whereas the former does not, but merely restores the parties to the same condition in which they were before the trial." (*Gibson* v.

*Morris State Bank,* 49 Mont. 60, 140 Pac. 76.)    And there is
not any incongruity between this position and the other one
assumed consistently by this court since the decision in *Orr* v.
*Haskell,* 2 Mont. 225, that a verdict should not be set aside
except for cogent reasons.    While the right of trial by jury
is a substantial one, to be respected at all times, insufficiency
of the evidence to justify a verdict has been a ground for a
motion for a new trial since the organization of our courts in
1864, and some meaning must be given to the statute.

The questions of fact suggested above were for determina-
[5] tion by the jury in the first instance, but that de-
termination was subject to review by the trial court on a
motion for a new trial, and, if the presiding judge was satis-
fied, as he must have been, that the preponderance of the
evidence was not with the plaintiff, it was his duty to set
the verdict aside, and the order made under such circum-
stances will not be disturbed on appeal.    (*Fadden* v. *Butte
Miners' Union,* 50 Mont. 104, 147 Pac. 620.)

No useful purpose would be served by setting forth even
a brief synopsis of the evidence.    We content ourselves with
saying that the record presents a sharp conflict in the tes-
timony touching the existence of the committee, the personnel
of its membership, if such a committee did exist, and the
authority, if any, conferred upon McGill.

Upon the trial, plaintiff secured the admission in evidence
[6] of a letter written by McGill to plaintiff and the reply
thereto; also six letters written by defendant Butler to plain-
tiff, and the reply to one of them.    W. A. Jordan was presi-
dent of the plaintiff corporation.    W. B. Jordan was chair-
man of the board of directors and had authority to represent
the corporation in the negotiations concerning this account.
While upon the witness-stand, W. A. Jordan identified one
letter written by W. B. Jordan to defendant McLean and
others, one to C. H. Mott, the mayor of Miles City, and three
letters written to defendant Butler.    These letters were of-
fered in evidence by defendants, but upon objection by coun-

sel for plaintiff were excluded. In the letter to Butler (defendants' exhibit C), Mr. Jordan referred to the materials in controversy as the property of the plaintiff company, and gave notice that if payment therefor was not made "we shall take action for the recovery of the property." By reference there was incorporated as a part of that letter a letter written by Jordan to H. V. Bailey, a member of the city council of Miles City, in which Mr. Jordan said: "The city of Miles City is owing our Northwestern Electric Equipment Company of St. Paul a large sum of money for lamp posts now being used by your city, which have not been paid for." By like reference there was also incorporated, as a part of the same letter, a letter addressed by Jordan to the mayor and city council of Miles City, in which Mr. Jordan made demand upon the city for "the return of the property or payment of the same."

In his letter to Butler (defendants' exhibit D), Mr. Jordan requested a complete list of "the names of the parties to the contract who have not paid." Further he said: "Our account is against the committee as above and was opened about a year before the shipment of the merchandise in controversy. The first transaction was paid and closed. The second order was filled and charged to the old account, not any notice having been given us of any change in the committee. We find now that Mr. H. B. Wiley had charge of and closed the first transaction but has had nothing to do with the second transaction, not closed."

In his letter to Butler (defendants' exhibit F), Mr. Jordan asked for "the names of the parties that have paid for their each and individual lamp post." The pertinency of these references can be appreciated when the theory of the defense is understood and certain evidence brought out at the trial is disclosed. Some time prior to this transaction ornamental lamp-posts had been installed on Main Street in Miles City by the property owners on that street. Appar-

ently those negotiations were carried on by this plaintiff and a committee representing the property owners interested. Later property owners on Fifth, Sixth, Ninth and Tenth Streets agreed among themselves that they would install the same character of lighting fixtures on their streets if the city would do the wiring and lighting, the expenses to be borne by the property owners, and this was assented to by the city. The necessary fixtures and supplies were ordered and the lighting system installed by McGill. It is the contention of the answering defendants collectively (other than McGill), that the contract was between plaintiff and the individual property owners; that the materials were procured for the property owners on the four streets indicated, and that each property owner was to pay the portion of the cost indicated by him; that most of the property owners complied with the agreement, and that the balance due plaintiff represents the several amounts due from other individual property owners who have not paid according to the agreement.

It is the contention of defendant McLean that he purchased and paid for one lamp-post, and that he acted only in securing a petition for the installation of these lights from the property owners on Tenth Street, and turned the petition over to defendant Leighton, and that he had no other connection with the transaction. Defendant Leighton contends that he acted only as one of the persons who collected the several amounts due from individual property owners and turned the money over to defendant Butler. It is the contention of defendant Butler that, aside from purchasing and paying for one lamp-post, he acted merely for the accommodation of the property owners in receiving their several payments and transmitting them to the plaintiff company.

It is conceded that the W. B. Jordan letters, above, all [7] refer to the transaction in controversy, and counsel for plaintiff apparently recognized the general rule incorporated in our statute (sec. 10515, Rev. Codes 1921), that where one party to the litigation introduces a part of a series of letters

touching the same transaction, the other party is entitled to introduce the remaining portion, if material to a complete understanding of the entire transaction. But they contend that the W. B. Jordan letters were not admissible for two reasons. As these exhibits were offered, each of them was objected to on the ground that W. B. Jordan was not a witness before the court. There is not any merit whatever in this objection. Each of the exhibits was properly identified. The plaintiff, being a corporation, could speak only through some authorized officer or agent. W. B. Jordan was an officer duly authorized to speak for it; hence, when a letter was produced purporting to be written for the plaintiff by someone authorized to act for it in that behalf, it was the corporation which spoke through the letter, whether the letter bore the signature of W. A. Jordan or W. B. Jordan. Under any construction which may be placed upon McGill's testi- [8] mony, he was a special agent, if an agent at all (sec. 7930, Rev. Codes 1921); hence plaintiff was bound at its peril to know for whom, if anyone, he was acting, and the character and extent of his authority. (*Moore* v. *Skyles*, 33 Mont. 135, 114 Am. St. Rep. 801, 3 L. R. A. (n. s.) 136, 82 Pac. 799; *Schaeffer* v. *Mutual Benefit Life Ins. Co.*, 38 Mont. 459, 100 Pac. 225.)

It is contended further that the letters do not contain any- [9] thing material to a complete understanding of this controversy; but with this we do not agree. Each of the letters referred to above (defendants' exhibits C, D, and F), contains declarations which may be said fairly to be against the interests of the plaintiff, and to the extent that those declarations tend to prove that plaintiff did not deal with or extend credit to the so-called "committee" they are material to a correct determination of this controversy. So, likewise, the defendants were entitled to have their theory of the case presented, and to this end the minutes of the city council, which were rejected, should have been received in evidence.

In excluding this evidence, the trial court erred, and corrected the errors so far as possible by granting a new trial.

The order is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Cooper, Galen and Stark concur.