## BENEMA, Respondent, v. UNION CENTRAL LIFE INSURANCE CO., Appellant.

(No. 7,027.)

(Submitted March 16, 1933.  Decided April 19, 1933.)

[21 Pac. (2d) 69.]

*Mr. Roy F. Allan, Mr. Bennett H. Smith, Messrs. Miller & Wiley* and *Messrs. Brown, Wiggenhorn & Davis,* for Appellant, submitted an original and a reply brief; *Mr. Horace S. Davis* argued the cause orally.

140

*Mr. E. J. Stromnes* and *Mr. W. F. O'Leary*, for Respondent, submitted a brief; *Mr. Stromnes* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by the Union Central Life Insurance Company from a judgment rendered against it and in favor of plaintiff. The action is one for wages earned by plaintiff as a carpenter under an alleged contract made by him with defendants. Defendant Robison defaulted. The Union Central Life Insurance Company, which will hereafter be called defendant, denied that it was a party to the contract.

The jury found for plaintiff. Defendant moved for a new trial and noticed it for hearing in due time on December 7, 1931. Before the time noticed for the hearing, plaintiff's counsel filed an affidavit disqualifying the Honorable F. E. Stranahan, judge of the twelfth judicial district wherein the cause was pending. On December 7, at the time fixed for hearing the motion for new trial, the court made the following order: "The presiding judge of this court having been dis-

qualified in this cause and no other judge being available at this time, the same is continued until the further order of the court." Thereafter, and on February 2, 1932, the following order was made:

"The undersigned judge having been disqualified in the above entitled case, the Honorable C. B. Elwell, judge of the district court of the Eighteenth Judicial District of the State of Montana, is hereby ·called in to assume jurisdiction and to proceed with said case, and the said Judge Elwell having indicated his willingness to appear and assume such jurisdiction on the 9th day of February, 1932, at 10 o'clock A. M., in the courtroom of this court, the motion for new trial and the motion to recall execution are hereby set down for trial and hearing on said 9th day of February, 1932, at 10 o'clock A. M.

"Done at Fort Benton, Montana, February 2, 1932.

"F. E. STRANAHAN, Judge."

On February 9 the motion was heard by Judge Elwell and taken under advisement. On the 18th thereafter Judge Elwell ordered "that the said motion for a new trial be and the same is hereby denied and dismissed." The minutes of the court of February 20 recite: "That the Honorable F. E. Stranahan, the regular judge of the district court of the Twelfth Judicial District of the State of Montana, in and for the county of Chouteau, was not able to get any district judge of the State of Montana to come in and assume jurisdiction in the within entitled court and cause until the Honorable C. B. Elwell, the judge of the district court of the Eighteenth Judicial District of the State of Montana, as aforesaid, came in and assumed such jurisdiction on February 9, 1932, as hereinbefore recited, or on any earlier date; and that the motion for a new trial of the defendant The Union Central Life Insurance Company, as aforesaid, was heard by the court at the earliest practicable date after December 7, 1931, the date whereon the said motion for new trial was first set for hearing, and from which such hearing was continued by the court as hereinbefore set out because of. the disqualification of the Honorable F. E. Stranahan, judge as aforesaid."

On March 1 defendant was granted sixty days in addition to the statutory time within which to prepare and serve his bill of exceptions. Within the time thus extended, its proposed bill was served and filed. It was thereafter settled.

Defendant by appropriate specification of errors challenges the sufficiency of the evidence to sustain the verdict and judgment. Plaintiff asserts that the evidence is not properly before us for consideration. Reliance is had by plaintiff upon section 9400, Revised Codes 1921, which in part provides: "The hearing on the motion for new trial shall be had within ten days after the notice of motion is filed when the motion is made only on the minutes of the court and within ten days after the filing of affidavits and counter-affidavits when the motion is made on affidavits. The court may continue the hearing for not to exceed thirty days when engaged in the trial of cases at the time set for said hearing, or when for any other cause the court is unable, without serious inconvenience, to hear the matter upon the date fixed. In case the hearing is continued by the court, it shall be the duty of the court to hear the same at the earliest practicable date thereafter, and the court shall decide the motion within fifteen days after the same is submitted. If the court shall fail to decide the motion within said time, the motion shall, at the expiration of said period, be deemed denied."

Plaintiff's position is that, in view of the facts here, Judge Elwell had lost jurisdiction over the motion for new trial and that in consequence the case stands as if no motion for new trial had been made, thus entailing the consequence pointed out in *Hanlon* v. *Manger*, 85 Mont. 31, 277 Pac. 433. But that case was decided before the effective date of Chapter 87, Laws of 1929, which permits a review of all questions on an appeal from the judgment which, before the enactment of section 9745, Revised Codes 1921, which Chapter 87 amended, could have been raised on an appeal from the order overruling the motion for a new trial. And Chapter 87 specifically provides that "such questions may be raised and reviewed regardless of whether or not motion for new trial has been made in

the trial Court.'' Hence, if the case stood as if no motion for new trial had been made it would not be ruled by the case of *Hanlon* v. *Manger*, supra, but by Chapter 87, Laws of 1929, which, since no other time was specified for its taking effect, became effective July 1, 1929 (sec. 90, Rev. Codes 1921), after the decision in the *Hanlon Case*.

Nor can it be held that the court lost jurisdiction over the motion for new trial because it was continued for hearing beyond the thirty-day limit provided in section 9400. That section was designed to promote dispatch in ruling upon motions for new trial.

Under the facts here no fault can be laid to defendant for not having the motion for new trial heard at an earlier date. It was originally noticed for hearing within ten days after the notice of motion was filed. Upon the disqualification of the presiding judge, there being only one judge in the district, there was then no judge having jurisdiction to hear the motion. The time consumed by the court in securing a judge to take jurisdiction of the cause cannot be counted in computing the time referred to in section 9400. As soon as Judge Elwell assumed jurisdiction of the cause, then he became subject to the limitations provided by section 9400, and he could not have continued hearing on the motion for more than thirty days; however, he did not continue the hearing at all, but heard the motion on the very day he assumed jurisdiction. In other words, the limitation of section 9400 that ''the court may continue the hearing for not to exceed thirty days when engaged in the trial of cases at the time set for said hearing, or when for any other cause the court is unable, without serious inconvenience, to hear the matter upon the date fixed,'' has application only to the judge of a court having jurisdiction to hear the motion. That limitation could not have applied to Judge Stranahan after his disqualification, for he was divested of jurisdiction except to call in another judge and to arrange the calendar. Neither party to the action can complain if it took more than thirty days after the motion was originally noticed for hearing to obtain another judge to assume jurisdic-

tion. Under the facts presented here, the district court did not lose jurisdiction over the motion for new trial, and the bill of exceptions, settled in due time after the decision upon the motion, was properly settled under section 9390, Revised Codes 1921, and the evidence is properly before us for review. Under somewhat similar facts the same conclusion was reached in *Hoppin* v. *Long,* 74 Mont. 558, 241 Pac. 636.

Defendant's contention that the evidence is insufficient to ██ ██ support the verdict and judgment rests upon the claim that no authorized agent of defendant contracted for the services of plaintiff as alleged in the complaint. From the record we find the following salient facts: On December 5, 1927, defendant entered into a written contract with John Robison, which was recorded in the office of the county clerks of Chouteau and Cascade counties, by the terms of which defendant agreed to sell, and Robison to buy, certain tracts of land situated in those counties. The contract is voluminous and all of its provisions need not be referred to here. Suffice it to say that under the agreement payments were to be made on the amortization plan, extending over a period of thirty-six years. The agreement provided that after the purchaser had paid $28,360 of the principal sum of $49,660, the insurance company would execute to the purchaser a deed and take a mortgage to secure the remainder of the purchase price. It contained a provision whereby one-half of the crop raised each year should be applied to pay taxes and the purchase price.

The contract contained this clause: "It is agreed between the parties that all prior and contemporaneous oral and written agreements pertaining to transactions herein are merged in this contract, and that this contract contains all existing agreements of every nature and kind pertaining to the transactions herein and connected therewith; and this contract cannot be modified or altered in any manner whatsoever, except by written consent and agreement executed by all parties affected by the proposed modification, and any such modification when made shall be effective only from and after the date such con-

sent and agreement is executed by the first party." It also provided: "First party [the insurance company] is to pay the actual cost of material for repairing fences and of repairing and remodeling buildings, in a total sum not exceeding $2,325."

It was stipulated by the parties that the fund of $2,325, agreed by the insurance company to be by it paid for repairs, was exhausted on September 6, 1929, by payments made· by defendant pursuant to the above clause of the contract. Robison, testifying for plaintiff, said that before he made the contract he viewed the land in company with Bennett Smith, the attorney and assistant financial correspondent of defendant, Mr. Fred Bissel, and Mr. S. H. Sivertson, defendant's field man at that time. They looked over and discussed the buildings. After taking up his residence on the property, Robison had a conversation with Mr. Yerrington, defendant's farm superintendent, regarding the repair of the buildings. They talked of employing a carpenter and, according to Robison, Yerrington said, "Go ahead, that I could get one as cheaply as he could." Robison's wife and son overheard this conversation and testified concerning it. After Robison had this conversation with Yerrington, he talked with Bennett Smith regarding the building program, and Smith asked him if he knew where he could get a carpenter. Thereafter Robison met plaintiff in Great Falls and inquired if he would do the work and what his price would be, stating to plaintiff that he desired to know in order that "I can tell my man." Upon learning from plaintiff what salary he would demand, Robison said he advised Smith of the fact, and that Smith said, "All right, hire him." This he did by stating to plaintiff, when he again met him in Great Falls, that "it was satisfactory with my man." On June 19, 1929, plaintiff went to work and continued daily, except Sundays, without interruption until October 1.

There was evidence that defendant paid more than $1,160 for materials furnished for making repairs on the property and that the money was paid direct to those furnishing the mate-

rials, and the payments were made after plaintiff commenced work, but on or before September 6.

Plaintiff corroborated Robison as to the manner in which he was employed by Robison. He said: "I never had any contract with the Union Central Life Insurance Company. Mr. Yerrington never hired me; neither did Mr. Smith nor Mr. Sivertson. If Mr. Robison is one of the employees, I made a contract with Mr. Robison." But thereafter, and after the motion for nonsuit was interposed, upon being asked, "Whom do you look to for your pay?" he replied: "The insurance company, the defendant in this action—this gentleman sitting here, the defendant; and that was the reason I give Mr. Smith the bill he asked me for. When Mr. Robison asked me to do some work for him, he told me he was representing the Union Central Life Insurance Company, and he asked me how much I wanted. When I told him how much I wanted per hour, he said he was going to see his man. I asked him, 'What man?' He said he had a farm bought from this company in Billings and that those fellows were going to pay for the work."

The evidence offered in behalf of defendant need not be reviewed in detail. On material matters it went to contradict that offered by plaintiff. In the view we take of the case, it is sufficient to say that the evidence offered by defendant did not in anywise aid the plaintiff.

It will be observed from the foregoing analysis of the evidence that plaintiff here had all of his dealings with Robison. He dealt with no other officer or agent of defendant. He himself admitted that he had no contract with defendant or with anyone other than Robison. After the motion for nonsuit was interposed, he was recalled to the stand and then for the first time suggested that he dealt with Robison on the latter's statement that he was acting for the Union Central Life Insurance Company, with which he had a contract to purchase land, and that this company was to pay the bill.

We are asked to disregard this latter testimony, under the rule announced in *McAllister* v. *McDonald*, 40 Mont. 375, 106

Pac. 882, *Casey* v. *Northern Pac. R. Co.*, 60 Mont. 56, 198 Pac. 141, and *Dunn* v. *Beck*, 80 Mont. 414, 260 Pac. 1047, on the theory that it is contradictory to plaintiff's previous testimony, and that plaintiff cannot complain if we view his case from that version of his testimony which is least favorable to him. We think, however, that the latter rule has no application here. Plaintiff's evidence was not so self-contradictory as to call for the application of the rule announced in these cases.

But viewing all the evidence in the light most favorable to plaintiff, we simply have a case where Robison was at most a special agent. (Sec. 7930, Rev. Codes 1921.) He in effect testified that Yerrington and Smith authorized him to employ a carpenter. This was the extent of his authorization. A person dealing with a special agent must at his peril ascertain the extent of the authority of the agent. (*Moore* v. *Skyles*, 33 Mont. 135, 82 Pac. 799, 114 Am. St. Rep. 801, 3 L. R. A. (n. s.) 136; *Schaeffer* v. *Mutual Benefit Life Ins. Co.*, 38 Mont. 459, 100 Pac. 225; *Northwestern Elec. Equipment Co.* v. *Leighton*, 66 Mont. 529, 213 Pac. 1094.)

If we consider the testimony of Robison as to what Yerrington and Smith told him with respect to hiring a carpenter, as carrying the implication that he could do so at the expense and on the credit of the insurance company, before we can affirm the judgment we must find some proof in the record that Yerrington and Smith, or either of them, had authority so to do. The record is barren of any evidence showing the extent of their authority. True, it was shown that Yerrington was the farm superintendent and Bennett Smith the assistant financial correspondent, but there is no evidence in the record showing the extent of their authority, and certainly none to show that they, or any other agents of the defendant, were authorized by the defendant to delegate authority to Robison to employ a carpenter at the expense and on the credit of the insurance company, and certainly not when that expense brought the total obligation of the defendant in excess of the amount specified in the contract. The contract itself inhibits any alteration or modification except by an instrument in writing executed by all parties affected.

"Presumptively an agent is employed to make contracts, not to rescind or modify them, to acquire interests, not to give them up, and no power to cancel or vary an agreement is to be inferred from a general power to make it, nor has the agent any implied power to waive or give up rights or interests for his principal, or to increase his obligations and liabilities for the mere benefit of third persons, unless the principal knows or approves of such modifications by the agent." (2 C. J. 645; and see *Morton* v. *Albers Bros. Milling Co.*, 66 Cal. App. 391, 226 Pac. 809; *California Canning Peach Growers* v. *Harris*, 91 Cal. App. 654, 267 Pac. 572; *Burner* v. *American etc. Co.*, 76 Cal. App. 774, 246 Pac. 77; *Jones* v. *Title Guaranty etc. Co.*, 178 Cal. 375, 173 Pac. 586; *Knight etc. Co.* v. *Orr*, 202 Ala. 677, 81 So. 633; *Kelly Construction Co.* v. *Hackensack Brick Co.*, 91 N. J. L. 585, 103 Atl. 417, 2 A. L. R. 685; *Flannery* v. *15 West 44th St. Co., Inc.*, 193 App. Div. 63, 183 N. Y. Supp. 228; *National Cash Register Co.* v. *Brainson*, 37 R. I. 462, 93 Atl. 645; *Bernstein* v. *Schwartz*, 108 Wash. 271, 183 Pac. 105.) The authority of an agent, and its nature and extent, can only be established by tracing it to its source in some word or act by the alleged principal. The agent cannot confer authority upon himself. (Mechem on Agency, 2d ed., sec. 285.)

Since there is no evidence in the record showing that Yerrington, Bennett Smith or any other agent of the defendant had authority to empower Robison to employ a carpenter at its expense and on its credit, and since there is no evidence from which an estoppel may arise, the defendant cannot be held liable to plaintiff. The court erred in not taking the case from the jury on defendant's motion for nonsuit and directed verdict.

The judgment against defendant Union Central Life Insurance Company is reversed and the cause remanded, with direction to dismiss the action as against it.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.