STATE ex Rel. FURSHONG et al., Relators, *v.* DISTRICT
COURT et al., Respondents.

(No. 7,700.)

(Submitted May 22, 1937.   Decided June 10, 1937.)

[69 Pac. (2d) 119.]

Mr. *W. E. Keeley* and *Mr. Roy A. Michaud,* for Relators, submitted a brief, and argued the cause orally.

Mr. *Sid G. Stewart* and *Mr. T. P. Stewart,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an application for writ of supervisory control to require the District Court of the Third Judicial District and the judge thereof to annul and set aside a judgment which admitted the will of Julia Manion to probate, and to have annulled and revoked the letters testamentary issued thereafter. This court caused to be issued and served upon the respondent judge an alternative writ. In response thereto a motion to quash was filed on the grounds that the application does not state facts sufficient to entitle the relators to this extraordinary relief; that the relators have an adequate remedy by appeal; and that the application does not show any unlawful, arbitrary, tyrannical, capricious, or unjust acts on the part of the respondent judge.

The offered will was executed on May 4, 1936, and filed in the office of the clerk of the district court on December 11, 1936. It contained provision for the burial of testatrix, and specific bequests to a church and three of her children. The residue of the estate was devised and bequeathed to the eldest son, Barney Manion, who was named executor of the will to serve without bonds. The bulk of the estate consisted of cash in the sum of $7,500.

The named executor made application to the district court for the probate of the will and for issuance to him of letters testamentary. Contestants, relators herein, filed written grounds of opposition to the probate of the alleged will. Contestants are three of deceased's children and were named in the will. The grounds of opposition were: "1. That the decedent was incompetent to make a last will and testament on May 4th, 1936. 2. That at the time the instrument offered for probate as her will was signed she was acting under the undue influence of Bridget Gallagher, one of the subscribing witnesses thereto; and 3. That said instrument purporting to be her last will and testament was not duly executed and attested by the decedent." Contestee filed an answer denying the allegations of the contestants' petition, and alleged affirmatively: Competency of the testatrix,

her freedom from undue influence, and the proper execution and attestation of the will. Contestants replied to this answer and issue was joined. Contestants filed a request that the issues of fact be tried by a jury, and the cause came on for trial on the 24th day of April, 1937.

The third ground of contest was apparently abandoned, and special interrogatories covering the first two grounds were submitted with proper instructions to the jury. The interrogatories were: "1. Was the deceased, Julia Manion, competent to make a last will at the time of the signing of the instrument offered for probate as her will and which bears the date of May 4, A. D. 1936? 2. If your answer to interrogatory No. 1 is 'yes,' was the deceased, Julia Manion, at the time of the signing of the instrument offered for probate as her will, and which bears the date May 4, A. D. 1936, and in the execution thereof, acting under the undue influence of Bridget Gallagher?" The jury, in its special verdict, answered each of these questions, "Yes." The verdict was duly filed. Contestants and contestee submitted forms of proposed judgments, one decreeing probate of the will, the other denying probate. The judge signed the judgment proposed by the contestee admitting the will to probate.

Relators urge three propositions in this proceeding. All three go to the same point and present but one question, and that is, whether a judge is bound to enter a judgment in conformity with a special finding of the jury in a will contest, where such finding is made upon insufficient evidence to justify it. In the judgment rendered, the court stated its reasons for the judgment as follows: "Special interrogatory No. 2 is now by the court rejected, disallowed and set aside, on the ground and for the reason that there was no evidence submitted in the trial of said contest to justify the verdict upon said Interrogatory No. 2, and it is contrary to the evidence and the instructions of the court in this case."

The error committed here—if it be error—is one committed by the trial court while acting within jurisdiction. An appeal lies from the judgment rendered in this cause by virtue of sec-

tion 9731, Revised Codes, and it therefore appears to us that relators have mistaken their remedy.

Our interference with litigation in a trial court by writ of supervisory control is justifiable only in certain special instances. This court has often repeated that the mere fact that an appeal lies from a certain order or judgment does not operate in every instance to defeat relief under the writ. (*State ex rel. Regis* v. *District Court*, 102 Mont. 74, 55 Pac. (2d) 1295, and cases therein cited.) A long line of decisions, however, has limited the use of this extraordinary remedy to certain well-defined classes of cases. Generally speaking, where no emergency exists to warrant the immediate action available under the writ, the remedy by appeal, if there be an appeal, is held to be adequate. No such emergency is presented in this case.

Relators set out in their application that an appeal would not be effective or afford adequate relief, because it would cause extended, needless, and expensive litigation requiring a transcript of the evidence; that the pendency and determination of such appeal would require many months and probably prolong the period and time required for administration, payment of claims, and distribution to those entitled to participate in the assets of the estate; that relators have substantial rights in the assets of the estate, and in the conservation and administration thereof; that such assets have been delivered into the custody of an executor acting without bond or security to protect or preserve relators' rights; that, pending an appeal in the ordinary course of law, such executor would continue to act without bond or security until such appeal could be finally determined by this court; and, finally, that the remedy by appeal, being neither plain, speedy, nor adequate, might cause to relators great irreparable injury and damage.

It appears to us that the alleged emergency is more apparent than real. It is true in an ordinary law action that an appeal might take considerable time. However, an examination of the statutes in the Probate Practice Act discloses that on the question of time for appeal the ordinary procedure provided in a

law action does not apply. (Sec. 10366, Rev. Codes.) Under section 10367, "the appeal must be taken within sixty days after the order or judgment is entered." (*In re Roberts' Estate*, 102 Mont. 240, at page 258, 58 Pac. (2d) 495.) The judgment in the cause below was filed May 11, 1937, so ample time still remains in which an appeal may be perfected. (Compare *State ex rel. Meyer* v. *District Court*, 102 Mont. 222, at page 226, 57 Pac. (2d) 778.)

The fact that the executor is acting without bond or security would also seem, in view of our statutes, to be a needless source of worry. In the will it was provided that the executor should act without bond or security. Section 10096, Revised Codes, as amended by section 2 of Chapter 150, Laws of 1937, provides: "When it is expressly provided in the will that no bond shall be required of the executor * * * letters testamentary * * * may issue * * * without any bond, unless the court or judge, for good cause, require one to be executed; but the executor * * * may at any time afterward, if it appear from any cause necessary or proper, be required to file a bond as in other cases." (See sec. 10088, Rev. Codes.)

With regard to the matter of expense connected with an appeal, we cannot see that it offers a hardship peculiar to this case or any different from that suffered by all appellants. If this reason alone were recognized as sufficient for invoking this extraordinary remedy, needless to say this court would be unduly besieged by litigants attempting to take advantage of this short-cut method of appeal, and litigation would be encouraged far beyond practical necessity.

It is argued quite seriously by relators that it is not necessary, ▮ for a determination of the question here involved, that the court should have before it a transcript of the evidence received below. We do not agree with this contention. If we could say as a matter of law that the trial judge in a will contest is bound to enter his judgment in accordance with the special findings of the jury, notwithstanding apparent error, possibly in submitting certain issues by inadvertence or otherwise, then relators'

contention might be well founded; but to say that a trial judge who has discovered his error before judgment must perpetuate that error through the entire proceedings until such time as he is reversed would seem to be an anomalous situation in our law. We do not here assume to decide that issue, however, and shall refrain from so doing until it is presented to us by appeal in the regular manner. We content ourselves by saying that we cannot decide whether there is evidence, direct or circumstantial, to support the judgment without having the testimony before us.

It is suggested by relators that the trial judge could have corrected any error he might have made by granting a new trial on later motion made, if, in his opinion, proper grounds or reasons by way of insufficiency of the evidence or otherwise existed. This is a possibility, but, in view of section 9745, Revised Codes, much of the force of such argument is lost because there it is made possible for an appeal to be taken directly from a judgment, whether motion for new trial has been made or not. Thus it may be seen that this avenue of rectification of the error might have been cut off, and the judge would have laid himself open for reversal for an error which he might otherwise have corrected. (See *Benema* v. *Union Central Life Ins. Co.*, 94 Mont. 138, 21 Pac. (2d) 69.)

The authorities relied upon by relators, and generally, are quite forceful on the question presented, but it is important to notice that in all these cases, including *Clough* v. *Clough*, 10 Colo. App. 433, 51 Pac. 513, and *In re Hobbins' Estate*, 41 Mont. 39, 108 Pac. 7, the question arose on appeals from judgments.

We therefore hold that a transcript of the evidence is necessary for a proper review of the question presented in this proceeding, and, no emergency appearing, the usual course of procedure by appeal is adequate and the proper one to present the matter for determination.

The motion to quash the alternative writ and dismiss this proceeding is granted.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON, MORRIS and ANGSTMAN concur.