HACKNEY, APPELLANT, *v.* BIRELY, SHERIFF, RESPONDENT.

(No. 5,136.)

(Submitted April 6, 1923.   Decided April 26, 1923.)

[215 Pac. 642.]

*Conversion — Livestock — Chattel   Mortgages — On   Property Thereafter Purchased—When Invalid—Taking Property for Pre-existing Debt—Purchaser for Value.*

Chattel Mortgages—What Entitled to Recordation.
  1.  The record of a chattel mortgage as provided by section 8279, Revised Codes of 1921, is equivalent to a delivery of the property by the mortgagor to and its retention by the mortgagee, and therefore whatever cannot be delivered and retained, except as to property potentially in being in which the mortgagor has a personal interest, cannot be placed of record.

Same—After-acquired  Property—Description—Record—Insufficiency.
  2.  While a mortgagor of personal property may include in the mortgage property thereafter to be acquired by him such after-acquired property must be described so accurately that third persons consulting the record may be put upon notice as to what is intended to be mortgaged, and if not so described as to enable the sheriff to identify such property, the mortgage as to it is void as against such third persons.            ＼

Same.
  3.  *Held,* in an action in conversion under the above rule, that the record of a mortgage of sheep that all property of like kind acquired by the mortgagor thereafter by purchase, exchange or substitution, not containing any description of a band of lambs thereafter acquired by the mortgagor and transferred to plaintiff in payment of a pre-existing debt, was an insufficient notice of a legal encumbrance upon the lambs and that the pretended mortgage as to them was void.

Same—Purchaser for Value—Taking Property for Pre-existing Debt.
  4.  An antecedent or pre-existing debt constitutes value, and therefore one who takes property in satisfaction of such a debt is a purchaser for value and entitled to full protection as such.

*Appeal from District Court, Yellowstone County; A. C. Spencer, Judge.*

ACTION by E. C. Hackney against E. M. Birely, Sheriff of Yellowstone County.  Judgment for defendant and plaintiff appeals.  Judgment reversed and cause remanded for a new trial.

*Messrs. Triplett & Karrick,* for Appellant, submitted a brief.

*Messrs. Nichols & Wilson,* for Respondent, submitted a brief; *Mr. Edmond Nichols* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff, a farmer living near Huntley in Yellowstone county, during the winter of 1920–21 fed some sheep for Charles O'Donnell, for which services O'Donnell was unable to pay. During the following summer the subject was discussed by plaintiff and O'Donnell on a number of occasions. The upshot was that O'Donnell agreed to, and later did, turn over to plaintiff 304 lambs. The plaintiff affirms these lambs were turned over to him in payment of the debt and there is testimony in the record sufficient to support a verdict in his favor upon this issue, although O'Donnell's testimony is not altogether in harmony with it. O'Donnell testified that when plaintiff took the lambs he (plaintiff) had not determined whether to receive them in payment of the debt or whether he would feed them and take his pay from the sale price in the spring. The lambs in question were purchased by O'Donnell's agent at Miles City some time in October, 1921, and were shipped from there by rail, arriving at Huntley on October 21, when they were received by plaintiff. He took them to his farm immediately, kept them in his possession, and fed them until they were seized by the sheriff, defendant, as is told later. Ten days before the arrival of the lambs at Huntley, and probably before they were purchased by O'Donnell—surely while they were not in Yellowstone county—O'Donnell gave a chattel mortgage to the American National Bank of Billings, describing the following personal property:

> 4,750 mixed lambs.
> Branded blue.
> "       red.
> "       black.

The mortgage contained the following paragraphs, among other printed provisions:

"The foregoing is all property owned by mortgagor, which is capable of identification by description given. It is intended hereby to mortgage all property owned by mortgagor, which is capable of identification by description given, though the property actually owned shall prove to be more in number or greater in amount than above indicated.

"It is the intent hereof also to mortgage all property of like kind to that above-described which shall be hereafter and during the life of this mortgage, acquired by the said mortgagor, including that acquired by increase, by purchase, by exchange, or by substitution for property herein described."

Then followed: "The said property is now in the possession of the mortgagor, in Yellowstone county, Montana, and usually kept on the following described real estate, to wit: S. 26, Township 2 N. R. 27 E. & S. 23 T. 2 N. R. 27 E. & S. 35 T. 2 N. R. 27 E."

The 304 lambs were not branded with either a blue, red or black dot; on the contrary, the brands they bore were entirely dissimilar to those described in the mortgage. They were never on the land described. The bank never had possession of the lambs, neither did it furnish the money to buy them. It is clear that O'Donnell did not intend to include them in the bank's mortgage, for he testified without objection: "None of these sheep were included in the lambs that were in that mortgage."

In December, 1921, the bank placed its mortgage in the hands of the defendant sheriff, instructed him to execute the power of sale therein contained and directed him particularly to take the lambs from plaintiff insisting that by the terms of the mortgage this after-acquired property was subject to the terms thereof. The defendant seized the lambs despite plaintiff's protest. Plaintiff made written demand for their possession, which was refused. They were sold at sheriff's sale in January, 1922. Then plaintiff brought this suit in the nature of an action in conversion. On the trial and at the close of the testimony each side moved for a directed ver-

dict. The court sustained defendant's motion and judgment in his favor followed. Plaintiff moved for a new trial, which was denied. Hence this appeal.

1. Certainly the 304 lambs were not comprehended in the [1–3] first paragraph above quoted. The precise question therefore is whether the mortgage by the terms of the second paragraph quoted includes the property acquired by the mortgagor by purchase after its execution.

The chattel mortgage as we know it in Montana is a creature of statute, governed by statutory rules. At common law a mortgage could operate only on property actually in existence at the time of giving the mortgage and then actually belonging to the mortgagor as an incident of other property then in existence and belonging to him. (Jones on Chattel Mortgages, 5th ed., sec. 138, and cases cited.)

Section 8275, Revised Codes of 1921, provides: "Any interest in personal property which is capable of being transferred may be mortgaged."

Section 8227, which is found in Chapter 83, Part V of the Civil Code, which Chapter relates generally to Liens, declares: "An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing, to the extent of such interest," and section 8224 says: "Contracts of mortgage or pledge are subject to all the provisions of this Chapter." Sections 8224 and 8227 undoubtedly were enacted to put beyond controversy in this state the old conflict between the rule at common law and that adopted by courts of equity respecting provisions concerning after-acquired property in chattel mortgages. (See Cobbey on Chattel Mortgages, sec. 349; *Mitchell* v. *Winslow,* 2 Story, 630, Fed. Cas. No. 9673; *Holroyd* v. *Marshall,* 10 H. L. Cas. 191.)

Upon a kindred question this court in *Isbell* v. *Slette,* 52 Mont. 156, 155 Pac. 503, said: "Independently of the statute (sec. 5712, Rev. Codes), one cannot sell or mortgage personal

property not in existence or in which he has no present interest." In that case the court was considering the validity of a mortgage upon crops not planted when the mortgage was executed. It was held, consistently with section 5712, now 8227, Revised Codes of 1921, that property which has a potential existence may be mortgaged or hypothecated; that annual crops have a potential existence even before they are planted; that the owner or one rightfully in possession of land has a mortgageable interest in crops thereafter to be planted on the land. The court concluded: "It goes without saying that the lien of such a mortgage cannot attach until the crops come into existence—until they are planted—and the decided weight of authority and the better reasoning limit the extent of the lien to the interest which the mortgagor then has."

By the provisions of section 8279, "every mortgage of personal property made, acknowledged and filed as provided by the laws of this state, is thereupon, if made in good faith, good and valid as against the creditors of the mortgagor, subsequent purchasers or encumbrancers, from the time it is filed, during its life." This recording is equivalent to a delivery of the property by the mortgagor to and its retention by the mortgagee. Whatever delivery and retention of possession will enable the mortgagee to hold will be equally held by the recorded mortgage, but what cannot be delivered and retained, except as to property potentially in being in which the mortgagor has a personal interest, cannot be placed of record as to what is to be mortgaged. The statute thus making the one the equivalent of the other, the record is valid only to protect that which the statute provides may be mortgaged. As to property "not yet in existence," the language of the above-quoted excerpts from *Isbell* v. *Slette* is sufficiently explanatory.

In this connection it may be noted that by the provisions of Chapter 100, Laws of 1923, it is provided that: "A chattel mortgage given upon livestock may, if specified therein, include all increase of like kind or progeny, and wool, of such

mortgaged animals, from year to year, during the life of the mortgage."

As to "property not yet acquired by the party agreeing to give the lien," the necessary implication is that it must be property capable of delivery, and such as may be taken possession of by the mortgagee upon its acquisition by the mortgagor. In view of the provisions of section 8279, which is a part of the Chapter governing chattel mortgages (secs. 8275 to 8291, inclusive; those sections being special to chattel mortgages), it is clear that the after-acquired property must be described so accurately that third persons may be put upon notice as to what is intended to be mortgaged.

In order that a chattel mortgage upon after-acquired property may be valid as against third persons without notice, the description of the property must be so definite and certain that a sheriff, from the information imparted to him by the very language of the mortgage, may be enabled to identify the after-acquired property intended to be included therein. If the sheriff from the terms of the mortgage itself is unable to identify the after-acquired property, the mortgage will be deemed void as to third persons respecting that property.

It is obvious that the 304 lambs are not within the description of the chattel mortgage at all. It follows that the record of the chattel mortgage before us was not a sufficient notice of a legal encumbrance upon the lambs purchased by O'Donnell at Miles City after the bank's mortgage was filed for record. An inspection of the record would not have imposed any legal duty upon the plaintiff. (See *Montana Elec. Co.* v. *Northern Valley Min. Co.*, 51 Mont. 266, 153 Pac. 1017.)

The plaintiff here had an agent examine the records in the office of the county clerk and was advised by him that the chattel mortgage to the bank did not include the lambs; the agent was warranted in his conclusion.

In passing, we observe that by the provisions of section 8278, Revised Codes of 1921, every mortgage of personal property must be filed in the office of the county clerk of the county

where the property was situated at the time of the execution of the mortgage. Obviously this was impossible respecting the property in controversy here.

2. But it is argued that even though the mortgage was not [4] good as to a creditor, subsequent purchaser or encumbrancer in good faith, plaintiff may not recover because his purchase was founded upon an antecedent indebtedness.

Assuming that the phrase "in good faith" means "for a valuable consideration without notice" (although upon this proposition the courts are not in harmony, 24 R. C. L. 386), we encounter the question as to whether one who takes property in satisfaction for a pre-existing debt is a purchaser for value. Here, too, there is great conflict in the authorities (24 R. C. L. 318). Courts which deny that one who takes in payment of a pre-existing debt is a purchaser for value, frequently cite the New York cases in support of their position. In New York the rule is that one who takes negotiable paper in payment of a pre-existing debt is not a purchaser for value. (24 R. C. L. 318.)

In those jurisdictions where it is held that a purchaser of negotiable paper in satisfaction of a pre-existing debt is not a purchaser for value it is held that such a purchaser of chattels is not to be considered a purchaser for value. And in some jurisdictions, even though in the case of negotiable paper the rule prevails that such purchaser is entitled to protection as one for value the courts refuse to extend the rule to purchasers of chattels. In other jurisdictions the courts have refused to recognize any valid basis for a distinction between purchasers of commercial paper and purchasers of chattels and consider one who takes a chattel in satisfaction of a pre-existing debt of a purchaser for value and entitled to full protection as such. (24 R. C. L. 394; *Frey* v. *Clifford,* 44 Cal. 335; *Virginia T. & L. Co.* v. *Glenwood L. Co.,* 5 Cal. App. 256, 90 Pac. 48; *Bank* v. *Redden,* 17 Ga. App. 473, 87 S. E. 701; *Butters* v. *Haughwout,* 42 Ill. 18, 89 Am. Dec. 401; *Redpath*

v. *Lawrence,* 42 Mo. App. 101; *Rice* v. *Cutler,* 17 Wis. 351, 84 Am. Dec. 747.)

With this last division Montana joins. By the express terms of our section 8432, Revised Codes of 1921, an antecedent or pre-existing debt constitutes value. While this section is a part of the Negotiable Instruments Act, the principle was recognized in the early case of *Laubenheimer* v. *McDermott,* 5 Mont. 512, 6 Pac. 344, in which the territorial supreme court said: "We think the doctrine, that a pre-existing debt is a valuable consideration for a chattel mortgage, is sustained by the weight of authority. See Jones on Chattel Mortgages, section 81, and cases cited, in which he asserts 'that such a mortgage protects the mortgagee to the same extent that he would be protected if he had paid a new consideration at the time of the mortgage.' [Citing cases.]" (And see *Kitchen* v. *Schuster,* 14 N. M. 164, 89 Pac. 261; *Knowles Loom Works* v. *Vacher,* 57 N. J. L. 490, 44 L. R. A. 305, 31 Atl. 306.)

While we do not intend to criticise the rule announced in *Foster* v. *Winstanley,* 39 Mont. 314, 102 Pac. 574, and *Montana Electric Co.* v. *Northern Val. Min. Co., supra,* believing the definition of "*bona fide* purchaser" therein quoted to be applicable to the conditions presented in those cases, we have determined to follow the doctrine that one who takes a chattel in satisfaction of a *bona fide* pre-existing debt, in good faith as to all the world, is a purchaser for value and entitled to the protection of section 8279 of the Revised Codes of 1921, and as consistent with this view, see Chapter 32, Laws of 1923, amending section 8275, Revised Codes of 1921.

By the terms of section 8279 three classes are protected against a mortgage of which they have no notice: Creditors, subsequent purchasers, subsequent encumbrancers. (*Moore* v. *Crittenden,* 62 Mont. 309, 204 Pac. 1035.) It is true that a creditor having no other hold upon the property must sequester it before he may enjoy the advantage of the statute; that is, he must attach it or otherwise take it by process of law. (*Wilson* v. *Harris,* 21 Mont. 374, 54 Pac. 46; *Wheeler & Motter*

*Mer. Co.* v. *Moon,* 49 Mont. 307, 141 Pac. 665.)   But, as indicated above, he may secure his debt by obtaining a mortgage upon the property, thereby obtaining the benefit of the statute. The statute places subsequent mortgagees and purchasers upon an equal footing.   If a pre-existing debt is a valuable consideration for a chattel mortgage, it is, of course, for a purchase of chattels.   If one secures payment of a just debt by purchasing property from his debtor in good faith and without notice of the rights of third parties in the property, he arrives at the same result as if he brought suit against the debtor and bought the property at execution sale.   It would be strange if the law would not permit the creditor, acting in good faith as to third parties and as between himself and his debtor, to obtain without litigation that which he could obtain by it.   The law does not encourage litigation.

3. As above stated, there is testimony in the record sufficient to support a verdict in plaintiff's favor on the question of ownership, but it cannot be said that there is not a conflict on this issue.   The jury might find upon the evidence that he did not purchase the lambs—that he simply took them to feed. This question must be submitted to a jury.   Conceding that the plaintiff owned the lambs when the defendant seized them, upon the record it is not practicable for us to attempt to determine their value upon that date.

For the foregoing reasons the judgment is reversed and the cause is remanded to the district court of Yellowstone county, with directions to grant a new trial upon the question of plaintiff's ownership, and if that be determined in his favor, then upon the amount of damage he has sustained by the conversion of the property.

*Reversed and remanded.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.