YALE OIL CORPORATION, Appellant, *v.* SEDLACEK
ET AL., Respondents.

(No. 7,371.)

(Submitted March 29, 1935.   Decided April 12, 1935.)

[43 Pac. (2d) 887.]

*Mr. P. F. Leonard* for Appellant, submitted an original, a reply and a supplemental brief, and, in conjunction with *Mr. S. C. Ford*, of Counsel, argued the cause orally.

*Messrs. Hildebrand & Warren*, and *Messrs. Nilles, Oehlert & Nilles* of the Bar of Fargo, North Dakota, for Respondent Minneapolis-Moline Power Implement Company, submitted a brief; *Mr. Raymond Hildebrand* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

For a period of years up to and including 1931, the defendant Ladislav Sedlacek was engaged in a general implement,

automobile, oil and gas business at Richey, Montana, which business he conducted under the name of the Richey Auto Company. During the years from 1927 to 1931, Sedlacek acted as the local dealer for the defendant Minneapolis-Moline Power Implement Company and its predecessor Minneapolis Threshing Machine Company, selling farm machinery, extras and supplies under contract in writing. These contracts for the years 1927, 1928 and 1929 are entitled ''Dealer's Commission Agreement,'' and provide: ''That the title to all machinery, extras and supplies of the Company shipped to, or held by, the Dealer, and the title to the proceeds of the same when sold, whether such proceeds be cash, notes or other property, shall be and remain in the Company, subject to no offset or counterclaim whatsoever.'' The contracts for the years 1930 and 1931 are entitled ''Dealer's Contracts,'' and contain the following provisions: ''The property in, title to and ownership of said farm implements, and of all other farm implements hereafter ordered, and of the proceeds of resales thereof, whether in cash, notes, book accounts or other proceeds, shall be and remain in the Company * * * until all payments hereunder * * * shall have been fully made in cash. Any notes taken by the Company shall not be deemed payment in whole or in part, but simply an evidence of debt.'' These contracts were not filed in the office of the county clerk; each party retained a copy.

Machinery and implements, to be sold by the Richey Auto Company in compliance with these contracts, were shipped to Richey on orders transmitted on blanks furnished by the company, which orders, when accepted, became contracts between the dealer and the company. These contracts contain the same provision respecting title as do the ''Dealer's Contracts'' of 1930 and 1931, quoted above, and provide, further, that, ''if the Dealer suspends payment, becomes insolvent * * * executes a chattel mortgage, * * * said company may, at its option, declare all indebtedness to it, due and payable forthwith and take possession of any Minneapolis-Moline goods then in his possession * * * and dispose of the same.'' On the

shipment of goods pursuant to such orders, the bill of lading was sent to the Richey bank with instruction to deliver it on the dealer's paying the draft for the amount of the freight, and executing notes forwarded to the bank by the company for the dealer's signature for the purchase price of such goods.

During the period mentioned the company issued a large number of non-negotiable commission certificates, each providing that after payment in full of a note described is received "in cash" by the company, the company will pay a certain amount to the dealer. These certificates declare, ''Provided that this certificate is issued and accepted subject to each and all of the provisions, terms and conditions set out and contained in a certain Dealer's Contract made by the    *    *    * Dealer and the undersigned for the season of,   *   *   *   '' giving the year in which the note of a customer of the dealer was taken.

During the period above mentioned, Sedlacek, operating as the Richey Auto Company, was agent for, and handled the products of, the plaintiff Yale Oil Corporation, and had become rather heavily indebted to it. During the latter part of 1929 and the fore part of 1930 he assigned, or attempted to assign, some thirty to forty commission certificates to the plaintiff as collateral security for his debt. The plaintiff advised the implement company of the fact, and requested information concerning the certificates, and was advised that they were not assignable; that they were payable only after the notes given in making the sale to which they referred were paid, and that even then the amount due the dealer was "at all times subject to any general debt, liability or obligation owed or to become due the company. The company reserves the right by virtue of the Dealer's Contract referred to on the face of each certificate.'' This information was imparted in a letter of date June 11, 1930, and was again referred to in a letter of July 18, 1930.

On September 4, 1930, counsel for the plaintiff secured from Sedlacek and his wife a mortgage on their real property,

already mortgaged to the First National Bank of Richey, and a mortgage on all the fixtures, furniture, tools and appliances used in their business.

On September 23, 1930, the credit manager of the plaintiff corporation secured from Sedlacek two chattel mortgages covering the stock of machinery, implements and supplies. These mortgages were filed with the county clerk. All of the above mortgages were given as security for the payment of a demand note for $5,307.05.

On or about June 1, 1931, the defendant Minneapolis-Moline Power Implement Company took into its possession and disposed of all of the property described in the chattel mortgages of September 23, 1930. Thereafter, plaintiff brought suit against Ladislav Sedlacek and Hazel Sedlacek, his wife, the Minneapolis-Moline Power Implement Company, and the First State Bank of Richey, charging the implement company with conversion of the property seized, demanding an accounting between the company and Sedlacek on the commission certificates, and an accounting between the bank and Sedlacek to determine the amount due on the bank mortgage; for judgment against the implement company in the sum of $4,000, alleged to be the value of the property taken; for judgment against the Sedlaceks for the amount due the plaintiff; and for the foreclosure of all of the mortgages held by the plaintiff.

Issue was joined; the cause was tried by the court without a jury, and, on the evidence adduced, the court by an "order" entered, made elaborate and painstaking findings of fact and conclusions of law, on which it based its judgment as follows: The bank is awarded judgment against the Sedlaceks in the sum of $4,351.71. The plaintiff is awarded judgment against the Sedlaceks in the sum of $5,613.87. The court found, on competent evidence, that Sedlacek was indebted to the company in an amount in excess of the value of the property repossessed and any amount to which he might be entitled on the commission certificates held by him and by the plaintiff; that the plaintiff was not a bona fide mortgagee of the property repossessed by the company, and therefore awarded the latter its

costs against the plaintiff. Foreclosure of the bank's real estate mortgage was decreed as a first mortgage lien against the property described, and plaintiff's real estate mortgage is foreclosed subject to the prior lien of the bank's mortgage. Decree of foreclosure of plaintiff's chattel mortgage on Sedlacek's fixtures, furniture, tools and equipment was entered. Foreclosure of plaintiff's two mortgages on machinery, implements and supplies therefor was denied. The judgment declares that "except as herein provided, the action of the plaintiff shall be, and is hereby, dismissed." Thus it appears that, as to the conversion feature of the action, the judgment is in favor of the Minneapolis-Moline Power Implement Company and against the plaintiff. From this part of the judgment the plaintiff has appealed.

The first question raised is as to the title to the property seized and disposed of by the defendant company, at the time the plaintiff secured its mortgages thereon. Counsel for plaintiff admit that, prior to 1930, Sedlacek "was merely an order-taker for the company"; received goods of the company on consignment and sold for them; but they assert that an entirely different situation arose under the new contract in 1930. We find nothing in the contract to warrant this assertion. The clause reserving title in the company, found in the 1930 and 1931 contracts, did not inadvertently creep into a contract for the direct sale of goods, for it will be noted on comparison of the clause with that contained in the former contracts, as above recited, it is a much stronger declaration than that theretofore employed. While the order blanks used in 1930 recite "the Dealer hereby purchases" the goods ordered, they also contain the provisions for retention of title contained in the contract to which they refer. Nor does the fact that the bill of lading sent to the bank to be delivered to the dealer on the payment for the draft for the freight charges, and the signing of a note for the purchase price, alter the relations of the parties. Section 20 of the dealer's contract for 1930 provides that: "The dealer agrees to make settlement * * * on a cash basis under this contract, on sight draft

with order bill of lading attached." The settlement for the goods in controversy was not made "on a cash basis," but by notes, and this fact was made known to plaintiff's agent, at the time he took the mortgages. The giving of a note does not operate to discharge the debt, in the absence of an agreement to that effect either in express words or by such conduct of the parties as to show an understanding that the paper is taken in satisfaction of the debt or estops the creditor from claiming the contrary. (*Gallaher* v. *Theilbar Realties,* 93 Mont. 421, 18 Pac. (2d) 1101.) The shipments were made pursuant to the orders transmitted, subject to the conditions on which those orders were accepted, and under the terms and conditions of the "Dealer's Contract" and under which the notes were taken not as "payment in whole or in part, but simply as evidence of debt," and therefore did not release the reserved title in the goods shipped. (55 C. J. 1225; 23 R. C. L. 1448; *McArthur Brothers Mercantile Co.* v. *Hagihara,* 22 Ariz. 100, 194 Pac. 336, 13 A. L. R. 1044; *Heinbockle* v. *Zugbaum,* 5 Mont. 344, 5 Pac. 897, 51 Am. Rep. 59.)

The contract between the dealer and the company is in terms and in fact a conditional sales contract on all goods delivered under the orders transmitted and accepted. (See *Evans* v. *Silver Bow Motor Car Co.,* 96 Mont. 156, 29 Pac. (2d) 381.) However, as the contracts were not filed with the county clerk of Dawson county, as required by section 7594, Revised Codes 1921, as amended by section 1, Chapter 145, Laws of 1925, they were, at the time the plaintiff took the mortgages, "void as to bona fide purchasers, mortgagees, or attaching creditors."

The vital question, then, is, Did the failure to file the contracts render them void as to plaintiff? A "bona fide purchaser" is "one who, at the time of his purchase, advances a new consideration, surrenders some security or does some other act which leaves him in a worse position if his purchase should be set aside and purchases in honest belief that his vendor had a right to sell, without notice, actual or constructive, of any adverse rights, interests or equities of

others in and to the property sold." (*Helena & Livingston S. & R. Co.* v. *Northern Pacific Ry. Co.*, 62 Mont. 281, 205 Pac. 224, 228, 21 A. L. R. 1080.) Under statutes such as ours, a mortgagee's rights are to be tested by the above rule; he being considered a "purchaser" to the extent of such rights. (*Fargason* v. *Edrington*, 49 Ark. 207, 4 S. W. 763; *Cole* v. *Hall*, 85 Ark. 144, 107 S. W. 175, 178; *Commercial National Bank* v. *Pirie*, (C. C. A.) 82 Fed. 799, 804; *Peck* v. *Bartelme*, 220 Ill. 199, 77 N. E. 216; *Hackney* v. *Birely*, 67 Mont. 155, 215 Pac. 642.)

The trial court found that the plaintiff had constructive notice of facts impeaching Sedlacek's title and right to mortgage the property in question, and was therefore not "a bona fide mortgagee." This conclusion is reached on evidence showing that the credit manager of the plaintiff corporation had knowledge of Sedlacek's financial condition; that Sedlacek, or his *alter ego*, the Richey Auto Company, was acting as dealer for the implement company, and that the machinery on hand was being handled under a dealer's contract; that the auto company had given notes to the implement company in payment for the machinery on which he was taking the mortgages. The credit manager had knowledge of the commission certificates; had read them; they referred to the dealer's contracts. The orders for the machinery referred to the contracts and contained the provision reserving title in the company and declaring the notes received merely evidence of the debt. These were present when the mortgages were drawn, and the description of the machinery was taken therefrom, either by the credit manager direct, or by Sedlacek reading the description to him from the orders. The evidence justifies the conclusion drawn.

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself, in all cases in which, by prosecuting such inquiry, he might have learned such facts." (Sec. 8781, Rev. Codes 1921.) This rule embodies an old rule of chancery (*Trerise* v. *Bottego*, 32 Mont.

244, 79 Pac. 1057, 108 Am. St. Rep. 521), which is expressed as follows by the Supreme Court of the United States: "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it." (*Wood* v. *Carpenter*, 101 U. S. 135, 141, 25 L. Ed. 807.)

The credit manager of the plaintiff, having actual knowledge of the nature of the certificates lodged with the plaintiff as collateral security and of the fact that the debtor was operating under a contract and paying for goods by note, and having actual notice, further, of the financial embarrassment of the debtor and that his property was mortgaged and of the fact that less than three weeks previously the attorney for the plaintiff had taken mortgages on Sedlacek's property, without including the machinery and implements therein, although the attorney had evidently sought to secure all of the security he could for his client, it is apparent that the credit manager had sufficient information to charge him with the duty of investigating the nature of Sedlacek's contract with the company.

A cursory examination of the order forms would have advised a reasonably prudent man that the debtor had no further property subject to mortgage. That the credit manager did not read the orders does not aid the plaintiff. Further, while a pre-existing debt constitutes a valuable consideration for a sale or for a chattel mortgage (sec. 8432, Rev. Codes 1921; *Laubenheimer* v. *McDermott*, 5 Mont. 512, 6 Pac. 344; *Hackney* v. *Birely,* above; sec. 8275, Rev. Codes 1921, as amended by sec. 1, Chap. 116, Laws of 1925), it is not such a consideration as will support the claim of a mortgagee that he is a bona fide purchaser within the meaning of the statute under consideration (*Sparks* v. *Taylor,* (Tex. Civ. App. 87 S. W. 740) unless the creditor has granted an extension of time for the payment of such a debt (*O'Brien* v. *Fleckenstein,* 180 N. Y. 350, 73 N. E. 30, 105 Am. St. Rep. 768), or "has in some way altered his legal condition for the

worse" (*Waterman* v. *Buckingham,* 79 Conn, 286, 64 Atl. 212, 214). This is the rule announced in *Helena & Livingston S. & R. Co.* v. *Northern Pacific Ry. Co.,* supra.

Here the plaintiff merely took the mortgages under consideration as additional security for a pre-existing debt evidenced by a demand note already secured by a real estate mortgage and a chattel mortgage, and for which it held the commission certificates as collateral security. The plaintiff did not advance a new consideration even by extending the time of payment; it did not surrender any security which it held, nor did it do any other act which would leave it in any worse position than it was in at the time these mortgages were taken, if they be set aside, and, as above demonstrated, it had constructive notice of the adverse rights of the company.

The plaintiff was not a bona fide mortgagee, and, therefore, the judgment must be affirmed. It is so ordered.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument, and takes no part in the foregoing decision.