CURTIS, RESPONDENT, v. ZURICH GENERAL ACCIDENT & LIABILITY INSURANCE CO., LTD., OF ZURICH, SWITZERLAND, APPELLANT.

(No. 7,916.)

(Submitted March 14, 1939. Decided April 29, 1939.)

[89 Pac. (2d) 1038.]

276

*Mr. R. F. Gaines,* for Appellant, submitted a brief, and argued the cause orally.

*Messrs. Meyer & Meyer,* for Respondent, submitted a brief; *Mr. William Meyer* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by defendant from a judgment entered on a verdict in favor of plaintiff. The action is one to recover

on a contract of indemnity, alleged to have been entered into by the parties.

According to the terms of the contract, which was delivered to plaintiff on May 24, 1932, in consideration of the payment of a premium of $28.62 made by plaintiff, defendant agreed to insure plaintiff for three years against loss on account of bodily injuries suffered by anyone not an employee of plaintiff within or upon certain described premises known as the Curtis Block owned by plaintiff in Butte, subject to a maximum liability of $5,000 for injury to one person, and $15,000 for one accident or disaster regardless of the number of persons injured.

On August 26, 1933, Laura F. Kager, a tenant residing on the property, sustained injuries while descending a stairway leading from the ground floor to the second floor of the building, of which plaintiff gave defendant timely notice. She brought action against plaintiff to recover damages on November 15, 1934. Plaintiff requested defendant to defend the action pursuant to the terms of the indemnity contract, and this it refused to do claiming that there was no liability upon defendant either to defend the action or to pay any damages which plaintiff might sustain as a result thereof.

Plaintiff thereupon employed counsel to defend that action, paying $600 as attorneys' fees. The action was compromised by paying Laura F. Kager the sum of $2,000. Other expenses were incurred in the sum of $58.50. The recovery sought and allowed here was the total sum of $2,658.50. The defendant admitted that Laura Kager was injured while in plaintiff's building, and that plaintiff in good faith compromised her claim for damages. Its defense to this action raises two main questions: Was the written contract relied upon by plaintiff ever effective, and, if so, had it been rescinded by the mutual consent of plaintiff and defendant? Did the contract ever become effective? Defendant contends that it did not, because it lacked the essential requirement of a meeting of the minds of the parties as to the terms of the contract. Defendant's contention is rooted on the fact that the contract contains a clause that the building covered by the contract is in the care and custody of

a single tenant, whereas the facts disclose that there were several tenants. To determine the merits of defendant's contention, a detailed statement of the facts becomes necessary.

Plaintiff and John H. Curtis, Jr., have for many years been partners engaged in the real estate and fire and automobile insurance business under the name of John H. Curtis Company. The Curtis Block at all times here in question belonged to plaintiff individually. Prior to the policy of insurance here in question a similar policy issued by the Georgia Casualty Company covered the Curtis Block; that policy expired on May 24, 1932. Prior to the expiration of the Georgia Casualty Company policy, John H. Curtis, at the request of plaintiff and in his behalf, orally ordered from defendant's local agent in Butte, M. Y. Daniel, a full coverage policy covering the Curtis Block with five and fifteen thousand dollar limits.

The Georgia Casualty Company policy had been issued to plaintiff through the company's Butte agent, John G. Bailey or the Bailey Loan & Realty Company. While that policy was in effect Bailey died, and his widow requested John Curtis and plaintiff to renew the policy through Daniel, who had purchased the insurance part of the Bailey Loan business. The Daniel Agency, by its purchase had become possessed of the Georgia Casualty Company policy and sent it to the defendant's Chicago office, but at whose suggestion this was done the record does not disclose. The Georgia Casualty Company policy contained this clause respecting the Curtis Block: "The assured is the owner or general lessee of the premises described in the declarations forming part of this policy and which constitute the subject matter of this insurance. Such owner or general lessee has leased the entire premises to another, herein called the 'lessee,' and the lessee controls and operates the elevators and boilers, furnishes power, and has charge and control of the premises, except that the assured may undertake the repair or maintenance for the preservation only of the insured premises."

The policy in question here contained this clause: "In consideration of the reduced premium at which is issued the policy

to which this endorsement is attached, it is hereby understood and agreed that the Assured named therein is the owner of the building or buildings therein described; that each building is wholly in the care and custody of a single tenant under a lease providing for such care and custody; that the Assured has no employees doing work in connection with the building and does not operate or control any elevator, heating or power plant, and that such conditions will continue throughout the entire term of this policy." Admittedly there was more than one tenant occupying the Curtis Block at the time the policy was issued and ever since.

Defendant contends that, since the policy here in question ■■ was intended to be a renewal of the Georgia Casualty Company policy, and since such contained a single tenancy clause, plaintiff is bound by that clause appearing in the policy in question. Plaintiff testified that he never read the policy and did not know that it contained the clause above quoted. The evidence further shows without contradiction that defendant's agent through whom the policy was procured, knew at the time it was applied for that the premises were occupied by more than one tenant. This knowledge was sufficient to impute notice that the premises were not "wholly in the care and custody of a single tenant," within the meaning of the terms of the policy. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself, in all cases in which, by prosecuting such inquiry, he might have learned such facts." (Sec. 8781, Rev. Codes; and see *Yale Oil Corp.* v. *Sedlacek,* 99 Mont. 411, 418, 419, 43 Pac. (2d) 887.)

There were no representations made by plaintiff to defendant or its agent, either orally or in writing, relative to whether the property was or was not occupied by or in the care or control of a single tenant. Neither is there any allegation or proof of concealment. Section 8086, Revised Codes, has application here. It provides:

"Neither party to a contract of insurance is bound to communicate information of the matters following, except in answer to the inquiries of the other:

"1. Those which the other knows;

"2. Those which, in the exercise of ordinary care, the other ought to know, and of which the former has no reason to suppose him ignorant;

"3. Those of which the other waives communication;

"4. Those which prove or tend to prove the existence of a risk excluded by a warranty, and which are not otherwise material; and,

"5. Those which relate to a risk excepted from the policy, and which are not otherwise material."

And section 8089 provides: "The right to information of material facts may be waived, either by the terms of insurance or by neglect to make inquiries as to such facts, where they are distinctly implied in other facts of which information is communicated."

In *Webber* v. *Massachusetts Bonding & Ins. Co.*, 81 Mont. 351, 263 Pac. 101, 104, this court quoted with approval from the case of *Pfiester* v. *Missouri State Life Ins. Co.*, 85 Kan. 97, 116 Pac. 245, as follows: "It is well settled that, where the agent of an insurance company, who fills out an application for insurance, is duly informed as to facts and fails to state them in the application, the actual knowledge of the agent will be held to be the knowledge of the company."

In *Stevens* v. *Equity Mutual Fire Ins. Co.*, 66 Mont. 461, 213 Pac. 1110, 1114, this court, after stating that the decisions are not in harmony, said: "By far the greater number, however, hold that the insured is not bound to search through the mass of printed matter on his policy for some clause that makes the policy void to which he must promptly object or forever hold his peace. He has a right to rely upon the good faith of the agent of the company. It is not carelessness on his part to suppose that a policy has been issued that will give him protection under the state of facts that he has related to the company. He is not then bound to discover every condition which 'crouches

unseen in the jungle of printed matter with which a modern policy is overgrown,' designed to make a defense for the company, after the loss has occurred against which the insurance professes to guard. (*Van Schoick* v. *Niagara Fire Ins. Co.*, 68 N. Y. 434.) Many of the authorities upon this question are gathered in the note to *Suravitz* v. *Prudential Ins. Co.*, reported in L. R. A. 1915A, 273 (244 Pa. 582, 91 Atl. 495.)''.

The breach of the single tenancy clause does not under the facts here avoid the policy. (Compare *Thielbar Realties Co.* v. *National Union Fire Ins. Co.*, 91 Mont. 525, 9 Pac. (2d) 469.)

Defendant takes the view that before plaintiff can recover under the policy, he must seek its reformation by showing, if he can, that the single tenancy clause was inserted by mutual mistake of the parties. But recovery, under circumstances similar to these, has been permitted without reformation, on the ground of waiver or estoppel. (*Thielbar Realties Co.* v. *National Union Fire Ins. Co.*, supra.)

''Where an insurer issues a policy without requiring any application or representation, or omits in an application to make inquiry as to a ground of forfeiture provided for in the policy, it waives the right to insist on a breach existing at the time of the issuance of the policy.'' (14 R. C. L. 1186; compare, also, *Wright* v. *Fire Ins. Co.*, 12 Mont. 474, 31 Pac. 87, 19 L. R. A. 211, *Johnson* v. *Rocky Mt. Fire Ins. Co.*, 70 Mont. 411, 226 Pac. 515, and *Midland Motor Co.* v. *Norwich Union Fire Ins. Co.*, 72 Mont. 583, 234 Pac. 482, 485.)

In 14 R. C. L. 1166 it is said: ''It is usually held that where the insurer, at the time of the issuance of a policy of insurance, has knowledge of existing facts which, if insisted on, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions. The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it void at its in-

ception, and this result is known to the insurer, it will be presumed to have intended to waive the condition, and to execute a binding contract, rather than to have deceived the insured into thinking his property is insured when it is not, and to have taken his money without consideration."

In the *Midland Motor Co. Case,* supra, this court said: "The general rule is that when the insurer at the time of the issuance of the policy had knowledge of existing facts which, if insisted on, would invalidate the contract from its very inception, such knowledge constitutes a waiver of the conditions in the policy inconsistent with the known facts, and the insurer is estopped from asserting the breach of such conditions." To the same effect are *North River Ins. Co.* v. *Lewis,* 137 Va. 322, 119 S. E. 43, and *Stanley* v. *Belt Automobile Indemnity Assn.,* 112 Kan. 412, 210 Pac. 1096.

Defendant contends that neither waiver nor estoppel can be relied upon here, because neither was pleaded. The evidence upon which waiver or estoppel is predicated was received without objection and, that being so, the pleadings will be treated as amended to conform to the proof. (*Lackman* v. *Simpson,* 46 Mont. 518, 129 Pac. 325; *Harrington* v. *Deloraine Ref. Co.,* 99 Mont. 78, 43 Pac. (2d) 660, and cases there cited.) Defendant will not be permitted to say, after accepting and retaining premiums and delivering the policy to plaintiff, that the contract was void at its inception merely because it contained the clause relating to the single tenancy, the facts concerning which were known to its agent who furnished the policy, and where plaintiff made no representations with reference thereto, and where plaintiff had no knowledge that such a clause was incorporated in the policy. To permit defendant to do so would enable it to deceive the plaintiff and to accomplish a legal wrong by making the latter believe that he carried insurance when in fact he did not.

Was the policy cancelled or rescinded? Evidence relating to the cancellation or rescission of the contract was in the main documentary. On December 31, 1933, John H. Curtis wrote to defendant at Chicago, Illinois, as follows:

"We carry the following Zurich policies for Public Liability insurance on properties we are interested in in this city:

"#G–8170432–Largey Estate & James L. Hamilton, assured.

"#G–8170437–George D. Curtis et al.

"#G–8170435        ,,            ,,

"#G–8170434        ,,            ,,

"All of these buildings are leased to tenants who look after the light, heat, elevators, power and ordinary repair. We reserve the right to take care of larger repairs such as roofs, etc., and also are consulted when tenants desire to make repairs to plumbing and change of structure or partitions.

"We note on some of our policies there is an endorsement attached that states in consideration of the reduced rate at which the coverage is written that it is understood that we have leased to a single *tenant* the premises and the tenant takes care of the heat, power and so forth as set out above. We do lease these premises with the understanding that they have control of such matters, but in each case the building is occupied by more than one lessee and we have leases with each individual tenant of the premises. In other words the buildings are made up of two or more store rooms or lodging quarters and we lease to each tenant separately.

"Are we properly covered under these policies and would your company recognize liability in case an accident occurs? It is our desire and intention to be properly protected and we would ask that you give this matter your prompt attention."

The company wrote to plaintiff on February 28, 1934, concerning policy #G–8170435, as follows:

"Under the terms of the above described policy we give you notice that we wish to cancel and do hereby cancel the said policy as of Noon of the 2nd day of March, 1934.

"12:01 or 12:00 Noon.

"Whatever adjustment of premium is called for by the said policy will be made as soon as the necessary data has been furnished by you."

It should be noted that this letter seems to concede that the policy was effective at the time of the injuries sustained by

Laura Kager and until March 2, 1934. On March 6, 1934, John H. Curtis, Jr., wrote to the company as follows:

"We are in receipt of cancellation notices covering the following Zurich Owners' Landlords' and Tenants' Liability Policies:

"G 8170432—G 8170434—G 8170435—G 8170437

"These policies were all written for this agency by your local agent, Mr. M. Y. Daniels.

"We note that the cancellation notice states that the adjustment of premium will be made as soon as the necessary data has been furnished by us.

"Apparently these policies were canceled for the reason that they were mis-written by stating that the premises in each case were leased to one tenant which was not the case in any policy and was known by all the persons involved in writing the policies. Therefore it is obvious that we have no protection under these policies since their inception and under the circumstances we feel that our clients are entitled to a return of the full premium under each policy of $28.62 making a total return premium due us of $114.48.

"In view of the fact that no return premium check accompanied the cancellation notices, we must feel that your liability exists until this adjustment is made."

On March 9, 1934, the company wrote to plaintiff as follows: "Herewith our check No. G–78842 in the amount of $31.66 in payment of the entire premium on policy G–8170435 and interest thereon. A copy of this letter is being sent to M. Y. Daniel Insurance Agency thru them this insurance was written." This letter was opened by John H. Curtis, Jr.; the enclosed check was endorsed by him by signing the name of plaintiff. The money was deposited in the bank to the credit of the account of the John H. Curtis Company, and plaintiff eventually received the money. John H. Curtis, Jr., in endorsing the check as above stated did so over the statement, "I or we accept this check in full payment of claim or account as stated on face hereof." The face of the check shows it was in payment of premium and interest on policy #G–8170435; but plaintiff tes-

tified that he had no knowledge of the fact that his brother had done these things. In this he was corroborated by John H. Curtis, Jr., who testified that he came to realize that he had "pulled a boner" and deliberately concealed the facts from plaintiff. Plaintiff testified that John H. Curtis, Jr., had no authority to act as his agent in rescinding the contract. Plaintiff, upon learning of the facts foregoing, tendered to defendant the sum of $21.35, the amount of the earned premium on the policy to the date of its attempted cancellation on February 28, 1934, but this the defendant rejected.

Whether or not an insurance company can accomplish a cancellation of its contract after liability under the policy has resulted by merely returning the premium paid by the insured with interest, and without other consideration, upon the mistaken belief that the policy was void at its inception, is doubtful. There is respectable authority that a compensated guarantor will not be released from the guaranty after a liability covered by its engagement has occurred. (*Fenton* v. *Poston*, 114 Wash. 217, 195 Pac. 31; *Schubach* v. *American Surety Co.*, 73 Utah, 332, 273 Pac. 974.) And where the privilege of cancellation is exercised under circumstances which would make it operate as a fraud on the insured, as here, it is invalid and not effective. (32 C. J. 1247.)

We think defendant had no right to cancel the contract of insurance so as to affect its liability for a claim that had already accrued. That there was no rescission here is shown by the fact that the insured never consented thereto. His apparent consent was given by John H. Curtis, Jr., but there was sufficient evidence to warrant the implied finding of the jury that John H. Curtis, Jr., was not authorized to act for plaintiff in the matter of rescinding the contract. That he was the agent in procuring the contract of insurance is conceded; but the power to make a contract does not carry with it the authority to rescind it. In *Benema* v. *Union Central Ins. Co.*, 94 Mont. 138, 21 Pac. (2d) 69, 72, this court said: "Presumptively an agent is employed to make contracts, not to rescind

or modify them, to acquire interests, not to give them up, and no power to cancel or vary an agreement is to be inferred from a general power to make it, nor has the agent any implied power to waive or give up rights or interests for his principal, or to increase his obligations and liabilities for the mere benefit of third persons, unless the principal knows or approves of such modifications by the agent.'' To the same effect, see 1 Restatement of the Law of Agency, p. 127; 2 C. J. 1252. The authority to obtain the contract was special and not general. (*McDonald* v. *North River Ins. Co.*, 36 Idaho, 638, 213 Pac. 349.) ''All persons dealing with an agent are bound to ascertain the scope of the agent's authority, and if they do not they deal with him at their peril.'' (*Barrett* v. *McHattie*, 102 Mont. 473, 59 Pac. (2d) 794, 796.)

There is some evidence tending to show that the agency of John H. Curtis, Jr., was broad and unrestricted. This was especially true of the partnership business. But it should be remembered that the Curtis Block was owned by plaintiff individually, and the matter of insurance against liability for accidents occurring thereon was not a part of the partnership business. As to that particular matter, the agency seems to have been restricted, or at least there was evidence tending to so show, sufficient to sustain the jury's implied finding to that effect.

Some contention is made by defendant concerning the giving of certain instructions, the refusal to give others proposed by it, and in modifying others. We have given consideration to these contentions. It is sufficient to say that the jury was fairly instructed on every phase of the case, and that there is no reversible error in the record relating to the giving or refusal to give instructions.

The only other points mentioned have to do with the exclusion of certain evidence sought to be elicited by defendant on the cross-examination of one of plaintiff's witnesses, and in permitting evidence to go in over defendant's objection. The court did not commit error in any of these respects.

No reversible error appearing in the record, the judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, STEWART and ERICKSON concur.