MERRION Et Al., Appellants, *v.* HUMPHREYS Et Al., Respondents.

No. 8678

Submitted January 9, 1947. Decided January 22, 1947.

176 Pac. (2d) 665

496

Mr. F. N. Hamman, Mr. Lloyd I. Wallace and Mr. L. L. Evans, all of Polson, for appellants.

Mr. Walter L. Pope and Messrs. Pope & Smith, all of Missoula, for respondents.

MR. CHIEF JUSTICE ADAIR delivered the opinion of the court.

Harry H. Byrd owned and resided upon a 113 acre tract of land near Ronan, Montana, commonly known as ·the Byrd ranch.

In the spring of 1942 Byrd contracted to sell his ranch to W. D. Humphreys. He also contracted to sell Humphreys cer-

tain personal property on the ranch including a bull and 42 head of Holstein cows.

An unrecorded written conditional sales contract covering the personal property, dated April 4, 1942, and signed by Byrd as vendor and Humphreys as vendee was introduced in evidence. The contract states the agreed purchase price of the personal property to be $5,015 of which $1,000 was to be paid in cash and the balance according to the terms of a promissory note incorporated in the contract in installments of $1,000 each payable November 1, 1942, April 4, 1943, and April 4, 1944, respectively, with a final installment of $1,015 payable on April 4, 1945.

The conditional sales contract also provides:

"If any of said installments are not so paid, the whole sum of both principal and interest to become immediately due and collectible at the option of the holder hereof. * * *

"The above note is given upon the purchase price of the following described property, to-wit: * * * 42-head of Holstein cows, 4 to 6 years old, and 1 Holstein bull, coming 4 years old, all branded WA on the right ribs. * * * It is expressly understood and agreed that the title to and ownership of said property is and shall be and remain in the vendor until the vendee shall have paid the above promissory note in full, and shall have kept, performed and complied with all the terms of the contract hereinafter set forth. It is understood and agreed that the vendee shall care for said property and * * * shall not create any lien against the same * * *; that the vendee will not sell, mortgage or in any way dispose of said property or part with the possession of the same, * * * It is further understood and agreed that * * * if the vendee shall fail to comply with any of the agreements hereof, or if the vendor or assigns should at any time deem the debt hereby evidenced insecure, or if said property be secreted, or seized by process of law or sold, incumbered or otherwise disposed of or abused or misused, or removed from * * * the possession of the vendee,

* * * the vendor or assigns may declare the entire amount unpaid upon the above note at once due and payable, and may, without notice or demand, at any time take possession of the said property wherever found and remove the same to such place as the vendor or assigns may deem advisable, and retain the same as his own property, or may sell the same with or without notice, at public or private sale, and apply the proceeds of said sale upon the above note, less the expense of taking possession of said property, removing and holding the same, and a reasonable attorney's fee, and in such case the vendee hereby agrees to immediately pay any balance then remaining unpaid upon the above note after the application of the proceeds of such sale. * * * In case the vendor or assigns shall take possession of and keep or sell said property under the terms hereof, the vendor or assigns shall be under no obligation to repay to the vendee any of the sums theretofore paid upon the above note by the vendee. * * *

"The total purchase price of this property is $5015.00; the amount of $1000.00 was paid upon the signing of this note and the balance of $4015.00 is to be paid in accordance with the terms of said note."

In the first part of April, 1942, W. D. Humphreys, the conditional vendee, moved on the Byrd ranch at which time the conditional vendor Byrd and his family moved from the dwelling wherein they had been living to another house situate on the northeast corner of the ranch at a distance of several hundred yards from the dwelling occupied by Humphreys.

There is testimony that during the summer of 1942 Humphreys neglected his dairy and farming operations, devoted the major portion of his time to caring for his sheep; that because of Humphreys' failure to irrigate the Byrd ranch the grass thereon dried up about the first of July and the pasture became lost; that thereupon Harry Byrd moved the dairy cows to certain lands leased from the Indian Agency including a tract known as the Little Martin place where the dairy herd was permitted to graze after Mr. Byrd had built fences around

the haystacks thereon. The witness Henry Johnson testified that Humphreys "was monkeying with the sheep and didn't have time. He was fooling around and Mr. Byrd did the irrigating and put up the hay—we knew we would have to have feed for them." He further testified that sometimes as often as two or three times a week Humphreys would neglect to milk the cows at which times the witness Johnson and Mr. Byrd would milk them and that sometimes the witness and Mr. Byrd would milk them "two weeks at a stretch."

There is testimony that Byrd had leased the Little Martin place for about five years and that he had seeded it to grass; that Humphreys had nothing to do with this tract of land; that the dairy cows had been moved to the Little Martin place several days prior to the date of the chattel mortgage given by Humphreys as mortgagor to Merrion & Wilkins as mortgagee and that on September 15, 1942, the day of the execution of such chattel mortgage, the dairy cattle were pastured on the Little Martin place.

Prior to the time they took the mortgage, plaintiffs had been informed by their agent Mr. Wallace that the mortgagor Humphreys owed numerous debts including: $6,500 owed to the local bank, secured by a chattel mortgage; $700 owed the Farm Security Administration at Spokane, secured by a mortgage on certain sheep; $850 owed to Phil I. Cole, secured by a second mortgage on the above sheep; $300 owed to Mission Valley Dairymen, Inc., secured by a mortgage covering 30 head of milk cows and certain 1942 crops; $235 owed to a local bank and secured by a chattel mortgage on certain 1942 crops and the sums of $1,471.22, $1,240.27 and $96 owed for machinery on contract notes to Missoula County Implement Company, Western Montana Implement Company and Ronan Garage Company, respectively. Humphreys also owed an unsecured promissory note dated at Ogden, Utah, July 27, 1942, in the principal amount of $1,730.51, due thirty days after date and payable to the order of the copartnership of Merrion & Wilkins at their office in Ogden. In renewal of this last-mentioned

note and as additional security for such pre-existing indebtedness the copartnership of Merrion & Wilkins on September 15, 1942, took a renewal note of said date in the principal sum of $1,733.67, payable with interest on December 15, 1942, and secured by a chattel mortgage on forty head of milk cows branded Quarter Circle over Lazy E with Points up A on right ribs.

Humphreys was unable to pay for either the land or the personal property which he had contracted to purchase from Byrd, including the bull and 42 head of Holstein cows and Byrd testified that about November 19, 1942, Humphreys turned the cattle back to him, canceled the land contract and that ''he just walked off and said he couldn't make it.''

On March 3, 1943, the plaintiffs, Merrion & Wilkins, commenced suit in the district court of Lake county against the defendants, W. D. Humphreys and Harry H. Byrd, setting forth two causes of action, in each of which they allege the execution and delivery to them by Humphreys on September 15, 1942, of a promissory note for $1,733.67 and a chattel mortgage securing same covering forty head of milk cows all branded Quarter Circle over Lazy E with points up A on right ribs. In the first cause of action it is alleged that the obligation is past due and unpaid and that by virtue of the mortgage the plaintiff mortgagees have a special ownership in the cows and that same are wrongfully detained by defendants. In the second cause of action it is alleged that the defendant Humphreys had delivered the mortgaged cows to the defendant Byrd who claims to own same and who has converted them to his own use and benefit in violation of the terms of the said chattel mortgage.

In their complaint plaintiffs demand possession of the cows or judgment for their value, foreclosure of the chattel mortgage lien thereon, and an order enjoining the sale, transfer or hypothecation of the cows pending final determination of the suit.

No service of process was had upon the defendant W. D. Humphreys nor did he appear in the action.

The defendant Harry H. Byrd filed an answer placing in issue the allegations of the complaint and alleging that Byrd was the owner of the described cows at the time plaintiffs took their mortgage, of which fact the plaintiff then had knowledge and notice, and that Humphreys was without right to mortgage same. The reply places in issue the affirmative allegations of Byrd's answer.

The cause was tried to the court without a jury. After hearing the evidence adduced, the court made and filed written findings of fact and conclusions of law wherein it found and concluded "that the defendant Byrd is the owner of the dairy cows described in the complaint, and that said defendant has never been divested of title thereto, that the rights and equities of the defendant Byrd are prior and superior to those of the plaintiffs and that the plaintiffs are not entitled to the possession of said cows as against the defendant Byrd" and in accordance with such findings of fact and conclusions of law made and rendered its judgment "that the plaintiffs take nothing by their said action against the defendant, Harry H. Byrd, that the said defendant, Harry H. Byrd, be, and he is hereby, adjudged the full, legal and beneficial owner of the property described in the complaint, and that the said complaint, as against the defendant, Harry H. Byrd, be, and the same is hereby, dismissed upon the merits and with prejudice."

From the judgment for the defendant Byrd, plaintiffs have appealed.

Plaintiffs contend that the trial court's findings of fact and conclusions of law "are inconsistent, and contrary to both the law and evidence." We find no merit in such contention.

The evidence shows and the court found that at all the times in question the defendant Harry H. Byrd was the exclusive owner of the cattle brand Quarter Circle over Lazy E with points up A on right ribs, which brand was duly recorded in the office of the general recorder of marks and brands as required by and in accordance with the provisions of sections 3299 to 3308.5 of the Revised Codes of 1935; that on and prior

to April 4, 1942, being the date of the conditional sales contract executed by W. D. Humphreys as vendee and the defendant Byrd as vendor, Byrd was the owner of the 40 head of milk cows branded with his aforesaid recorded brand and described in plaintiffs' complaint and in the chattel mortgage of September 15, 1942, given plaintiffs as mortgagees by W. D. Humphreys as mortgagor and that said 40 head of milk cows so branded "are a part of the cows described in the said conditional sales contract * * * theretofore made between the said Byrd and the said Humphreys, defendants herein"; that the said Byrd did not file with the clerk and recorder either the original or a copy of said conditional sales contract of April 4, 1942, as required by the provisions of section 7594, Revised Codes, as amended; that the chattel mortgage of September 15, 1942, was on that day duly filed for record in the office of the county clerk and recorder of Lake county; that except for the $1,000 paid at the time of the signing of the conditional sales contract on April 4, 1942, the defendant Humphreys paid nothing on said contract, leaving a balance due and owing by the defendant Humphreys to the defendant Byrd in the sum of $4,015 and interest; that on or about November 19, 1942, Humphreys returned possession to Byrd of all the personal property described in the conditional sales contract pursuant to a written agreement made and entered into by them on November 19, 1942; that plaintiffs failed to ascertain from the general recorder of marks and brands the name of the owner of the cattle brand on the cows described in their mortgage and that they failed to make any inquiry of Byrd, the registered owner of such recorded cattle brand, as to whether he had any interest in said cows. From the foregoing facts found the trial court concluded that at the time the chattel mortgage to plaintiff was made and delivered the legal title to the dairy cows described therein was vested in Byrd and that he has not been divested of such title; that an examination of the records of the general recorder of marks and brands would have disclosed to plaintiffs the ownership of the brand

appearing on the cows involved and the prima facie ownership of said cows as provided in section 3304, Revised Codes; that the record of Byrd's registered brand in the office of the recorder of marks and brands was at all times constructive notice to all persons that the defendant Byrd was the owner of all right, title and interest in the cows described in said conditional sales contract; that plaintiffs took said chattel mortgage subject to the right and equities of the defendant Byrd as disclosed by the terms of said conditional sales contract, namely, the payment to him of $4,015 and interest, being the balance of the purchase price under the terms of the contract; that the right and equities of Byrd for the satisfaction of the amounts owing him under the conditional sales contract are prior and superior to those of the plaintiffs under their mortgage and that plaintiffs are not entitled to the possession of said cows as against the defendant Byrd.

The evidence shows that before Humphreys executed the mortgage to them, plaintiffs had actual notice of facts and circumstances sufficient to put a prudent man upon inquiry as to the ownership of the cows in question. Plaintiffs' agent, Mr. Wallace, who took the chattel mortgage from Humphreys had theretofore been informed by Mr. Olsson, the banker, who drafted the conditional sales contract of April 4, 1942, that Byrd had sold the cows to Humphreys under contract and that Humphreys had no property to give as security. Another creditor had informed plaintiffs' agent that the mortgagor was "slippery." The agent admits that he was fully informed as to Humphreys' outstanding debts and encumbrances; that the banker had informed him that the cows belonged to some one other than Humphreys and that he had so reported to his principals three days before he took the mortgage from Humphreys. The mortgagor described the brands on the cows and plaintiffs' agent placed such description in the mortgage. Ordinary prudence would dictate that plaintiffs' agent make inquiry from some source other than from the

mortgagor as to the ownership of the cattle brand and as to whether the brand had been recorded.

Section 8781, Revised Codes, provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself, in all cases in which, by prosecuting such inquiry, he might have learned such facts." See Yale Oil Corporation v. Sedlacek, 99 Mont. 411, 43 Pac. (2d) 887; Curtis v. Zurich General Accident, etc., Co., 108 Mont. 275, 89 Pac. (2d) 1038, 1040.

Section 3304, Revised Codes, provides: "The person * * * in whose name any mark or brand is of record, as in this act provided, is entitled to the *exclusive use* of such mark or brand on the species of animal and in the position designated in such record, and a copy of such record certified by the general recorder of marks and brands shall * * * be prima facie evidence that the person * * * entitled to use such mark or brand is the owner of all animals on which the same appears in the position and on the species of animal stated in such certificate." (Emphasis ours.)

Section 3300, Revised Codes, provides: "Every person who sells * * * cattle must vent or counter-brand such animals, * * * and the venting of said original brand shall be prima-facie evidence of sale or transfer of said animal or animals so vented." There was no venting of the brand of the cows involved in this controversy.

While section 7594, Revised Codes of 1935, as amended by Section 1, Chapter 70, Laws of 1943, provides for the filing in the office of the county clerk and recorder of the proper county of all contracts, notes and instruments for the transfer or sale of personal property, when the title is stipulated to remain in the vendor until the payment of the purchase price under the penalty of becoming "void as to bona fide purchasers, mortgagees, or attaching creditors of such property prior to such filing," still the plaintiffs may not here invoke the penalty of such statute for the court correctly found on undisputed evi-

dence that plaintiffs had constructive notice of facts impeaching Humphreys' title and right to mortgage the 40 head of branded dairy cows described in the mortgage by reason whereof plaintiffs are not *bona fide* mortgagees as contemplated by the statute. Yale Oil Corporation v. Sedlacek, supra.

The evidence amply sustains the trial court's findings of ██ fact and its conclusions of law are warranted by the statutes and prior decisions of this court. The judgment is affirmed.

Associate Justice Choate, Angstman, Cheadle and Metcalf, concur.